**2014-1743**

*In The*
# United States Court Of Appeals
## For The Federal Circuit

## LUGUS IP LLC,

*Plaintiff - Appellant,*

v.

## VOLVO CAR CORPORATION,
## VOLVO CARS OF NORTH AMERICA LLC,

*Defendants - Appellees.*

**Appeal from the United States District Court for the District of
New Jersey case no. 1:12-cv-02906-JEI-JS**

———————————

## BRIEF OF APPELLANT

———————————

John R. Fuisz
Sudip K. Kundu
THE FUISZ-KUNDU GROUP LLP
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC  20004
(202) 756-8000

*Counsel for Appellant*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for **Appellant** certifies that:

1.     The full name of every party or amicus represented by me is:

**LUGUS IP, LLC**

2.     The name of the real party in interest (if the party named in the caption is not

the real party in interest) represented by me is:

**None**

3.     All parent corporations and any publicly held companies that own 10 percent

or more of the stock of the party or amicus curiae represented by me are:

**None.  (The Medici Portfolio LLC is the managing member of Lugus IP LLC).**

4.     The names of all law firms and the partners or associates that appeared for

the party or amicus now represented by me in the trial court or agency or are

expected to appear in this court are:

**John Fuisz and Sudip Kundu both of the Fuisz-Kundu Group LLP and William H. Trousdale and Brian M. English both of hompkins, McGuire, wachnfeld & Barry LLP**

Dated:  October 21, 2014

*/s/ John R. Fuisz*
_____
Signature of Counsel

*/s/ John R. Fuisz*
_____
Printed name of Counsel

# **TABLE OF CONTENTS**

**PAGE:**

CERTIFICATE OF INTEREST .................................................................. i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ....................................................................v

STATEMENT OF RELATED CASES ..................................................1

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE.................................................................2

    STATEMENT OF THE FACTS .........................................................4

    I.    The '926 Patent.......................................................................4

    II.   The Volvo Seats ......................................................................8

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT .........................................................................................14

    I.    Standard of Review ...............................................................14

    II.   The District Court Erroneously Granted Summary Judgment of Non-Infringement Based upon the "Retracting Means" Limitation ........14

        A.    The District Court Erred in Finding No Infringement Based Upon Volvo's Argument that Its Booster Seats Do Not Automatically Retract When a Child is Not Located In the Seat ..........................................................................................15

            1.    The District Court Incorrectly Construed the "When said Child Is Not Located in Said Safety Seat" Language in the "Retracting Means" Limitation.................15

2.      Volvo's Retractable Child Seats Meet the "When said Child Is Not Located in Said Safety Seat" Language in the "Retracting Means" Limitation...................20

III.    The District Court Erred In Its Construction And Application Of "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat" ...................22

A.      The District Court's Construction...................22

1.      The Preferred Embodiment Of The '926 Patent.................24

2.      Volvo Has Conceded That A Fully Contoured Adult Seat Is One That "Can Be Used By An Adult.".................27

B.      The Volvo Seat Infringes The Limitation "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat"..........................28

1.      The District Court Failed To Recognize Important Disputed Facts and Interpretations ......................28

a.      The District Court Did Not Reference, Cite, Discount Or In Any Way Acknowledge The Existence Of The Only Evidence Of Record Showing An Actual Accused Volvo Seat (Which Evidence Directly Refutes The District Court's Conclusions)..................................31

b.      The Volvo Seat In Evidence Demonstrates An Automatic Retraction To A Fully Contoured Adult Seat .................................................................36

IV.     The District Court's Identified Structure Improperly Contains The Results From The Function Being Performed.........................37

V.      The District Court's Analysis of the Doctrine of Equivalents Is Flawed and Should Be Reversed.............................................40

CONCLUSION................................................................41

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................14

*Asyst Techs., Inc. v. Empak, Inc.*,
    268 F.3d 1364 (Fed. Cir. 2001) ...................................................38

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
    227 F.R.D. 313 (C.D. Cal. 2004)..................................................30

*CNH Capital Am. LLC v. McCandless*,
    No. C05- 2087, 2007 WL 1830819 (N.D. Iowa June 22, 2007)...................30

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
    597 F.3d 1374 (Fed. Cir. 2010) ...................................................14

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
    370 F.3d 1131 (Fed. Cir. 2004) ...................................................40

*Horton v. Hussman/Ingersoll-Rand Co.*,
    4:05-cv-00065-DDN (E.D. Mo. July 19, 2006) ..................................... 29-30

*In re Air Crash Near Kirksville, Mo. on Oct. 19, 2004*,
    No. 4:05MD1702 JCH, 2007 WL 2363505 (E.D. Mo. Aug. 16, 2007)........30

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ............................................18, 19

*Lighting Ballast Control LLC v. Philips Electronics North America Corp.*,
    744 F.3d 1272 (Fed. Cir. 2014) ...................................................14

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007) ........................................... 26-27

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) ...................................................27

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,*
  386 F.3d 1133 (Fed. Cir. 2004) ....................................................27

*Thorner v. Sony Computer Entm't Am. LLC,*
  669 F.3d 1362 (Fed. Cir. 2012) ..................................................18

## STATUTES:

28 U.S.C. § 1295(a)(1)..................................................................1

28 U.S.C. § 1331............................................................................1

28 U.S.C. § 1338............................................................................1

28 U.S.C. § 1404............................................................................2

35 U.S.C. § 112(f).................................................................2, 13, 15

## RULES:

Fed. R. Civ. P. 26(a).................................................................29, 30

Fed. R. Civ. P. 26(e)....................................................................29

Fed. R. Civ. P. 37(c)....................................................................29

Fed. R. Civ. P. 37(c)(1)................................................................29

Fed. R. Civ. P. 56(c)....................................................................14

## STATEMENT OF RELATED CASES

There are no related cases.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1). Plaintiff-Appellant timely filed the Notice of Appeal on August 19, 2014.

## STATEMENT OF THE ISSUES

A.      Whether the district court committed reversible error in construing "when" in Claim 1 of the '926 Patent to mean "in the event of," and then applying that construction so that Claim 1 is limited to child safety seats that must automatically retract only at the moment a child is removed from the seat.  (A68-A69.)

B.      Whether the district court committed reversible error in construing "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat" in Claim 1 of the '926 Patent in a way that excludes the patent's preferred embodiment from the scope of the claim.

C.      Whether the district court committed reversible error when it found that the Volvo Seats do not infringe Claim 1 of the '926 Patent.

D.    Whether the district court committed reversible error in its

identification of corresponding structure under 35 U.S.C. § 112(f) by including

features in addition to those necessary for performing the claimed function.

E.    Whether the district court's finding of no infringement under the

doctrine of equivalents should be vacated in the event any of its claim

constructions, or applications of the claims to the accused devices, are vacated.

## STATEMENT OF THE CASE

Lugus IP LLC's ("Lugus") filed a Complaint against Defendants Volvo Car

Corporation ("Volvo Cars") and Volvo Cars of North America, LLC ("Volvo

NA") (collectively "Volvo") on December 7, 2011 in the Eastern District of

Virginia alleging infringement of the '926 patent.  On March 19, 2012, Volvo

answered the Complaint and filed a Motion to Transfer Venue to the District of

New Jersey solely for convenience reasons pursuant to 28 U.S.C. § 1404.  On May

15, 2012, the case was transferred to the District of New Jersey.

On May 9, 2014, Volvo filed a summary judgment motion for

noninfringement alleging that "[t]he claims of U.S. Patent No. 5,806,926 ("the

'926 patent") require that a child booster seat (1) automatically retract to form part

of a fully contoured adult seat; and (2) automatically retract when a child is not

located in the booster seat."  Volvo Opening SJ Brief at 1.   Volvo further claimed

that there was no factual dispute over the operation of the accused seat and that it

met neither of these claim requirements. *Id*. Volvo's motion does not address whether its integrated seats include the corresponding structure to the means for automatically retracting limitation.

On May 20, 2014, The Court issued a Claim Construction Order and Opinion, (A18) ("Claim Construction Order"). The Claim Construction Order found the "means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat" limitation recited in claim 1 to be a means-plus-function limitation, and it construed it as follows:

> Function: ""automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat."
>
> "'automatically' is construed as having its plain and ordinary meaning"
>
> "'when' is construed as 'in the event that'"
>
> Structure: Contracting piston **56**, including the forward portion **58**, rear portion **60**, and piston rod **62**; pivoting back portion **18**, including rear portion **64**, bushing **84**, bolt **86**, downward projection **88**, bushing **90**, and bolt **92**; seat frame **94**; bushing **96**; and bolt **98**, such that the bottom surface of the pivoting back portion **18** forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion **18** can form a seat portion of a child safety seat.

(A53-A54).

Lugus then attempted to stipulate to noninfringement in light of the district court's construction of "when." This stipulation was rejected and Lugus filed a Motion To Dismiss, which was opposed by Volvo and later dismissed as moot by the District Court. On June 23, 2014, Lugus then offered a second stipulation, which was again rejected by Volvo.

On July 23, 2014 the district court issued its opinion (A57), granting Volvo's motion for summary judgment and denying Lugus's motion to dismiss as moot. The district court concluded that "Under the adopted constructions of these claim terms, Volvo's accused product does not automatically retract to form part of a fully contoured adult seat, nor does the accused product retract when a child is removed from the seat." (A73).

## Statement of the Facts

### I.    The '926 Patent

David A. Parson of Jefferson, Maryland is the sole inventor of the patent at issue, U.S. Patent No. 5,806,926, entitled "Convertible Vehicle Child Safety Seat." (A77-A81.) Mr. Parson was a school bus driver and saw the need to provide a way to safely transport children who otherwise could not use adult seats and seat belts while not compromising the busses ability to transport adults when no children were present. Parson's invention "relates to vehicle seats and more particularly

seats for safely seating a child occupant of the seat that can safely be used by children or can be used by adults." (A80 at col. 1:58-61.)

Parson's patent shows the invention as follows:



A78, Figure 1.

The seat 12 has a pivoting back portion 18 that "can be manually pulled forward and downward and as illustrated in the seat 14 can form part of the normal seat back which makes the seat hardly distinguishable from a conventional vehicle seat." (A80 at col. 2:62-65.)

When the seat is presented for a child, the seat belts fit through a fastener 40. The slot is "engaged by the projecting end portion 46 of a spring loaded plunger 48 that is biased rearward by a compressed coil spring 50." (A81 at col. 3:13-17.) "The plunger 48 has a generally T shaped handle 52 on its outer end that projects outward from the forward portion 54 of the seat and this permits the fastener 40 to

be released when it is pulled manually outward to further compress the coil spring 50." (A81 at col. 3:17-21.) The seat is provided with a "contracting piston 56" that connects the seat and back portion "in such a manner as to cause the seat back portion 18 to pivot into its upward position as illustrated for the seat 14 when the handle 52 is pulled outward and the child is removed from the seat back portion 18." (A81 at col. 3:22-30.) As illustrated in Figure 1 for seat 14 when in its retracted position "the child safety portion is stored behind the seat back portion 18 and this permits the seat 18 to be used in a normal fashion by an adult passenger." (A81 at col. 3:31-35.)

"At the appropriate time, when the child is to be released from the seat 12, an adult passenger merely pulls out on the T-shaped handle 52 to release the plunger 48 and hence the fastener 40 and the associated harness 22. This permits the child to be removed from the seat back portion 18 and in view of the previously described contracting piston 56, the seat assumes the position illustrated in FIG. 1 for the seat 14 to allow normal seating of an adult passenger." (A81 at col. 4:21-27.) See Figure 2 below, which illustrates the T-shaped handle and its operation on the fastener 40:



The Parson's patent has one independent claim and 4 dependent claims. The one independent claim reads as follows:

> 1.     A adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle comprising an adult seat, a child safety seat, said child safety seat being part of said adult seat and having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat.

Claim 2 depends from claim 1. Claim 3 depends from claim 2. Claim 4 depends from claim 3. Claim 5 depends from claim 4.

The Parson's patent was subject to a single Office Action dated January 7, 1998 that indicated pending claims 9 and 10 were objected to as being based on a rejected base claim but would otherwise be allowable.  (A230-31.) On March 16, 1998, new claims were presented and a Notice of Allowance then issued.  (A234-A237; A240.)

## II.    The Volvo Seats

Volvo sells vehicles with a built in booster, which may be single or dual stage (all of which are the "Volvo Seat(s)").  Volvo has taken the position that "the 'design and configuration of [Volvo's] one-stage and two-stage integrated booster seats' is the same in each of the accused model years."  (A65 citing A792).  Volvo's factual basis for its summary judgment motion is supported solely by: "Selected pages" from four (4) Volvo user manuals and nonconsecutive, "selected pages" from a document entitled "Two-Stage Booster Technical Regulation", the latter of which was the subject of an unopposed challenge and not relied upon by the District Court.[1]  (A615-A637).  Twenty-two (22) pages at most, possibly only nineteen (19) pages of evidence.  *Id*.  Volvo has offered no other evidence on the retraction operation of the Volvo Seats.  Volvo chose to not have its declarant, Per Isaksson, make any statement about the retraction operation of the Volvo Seats. (A792, A973).

Lugus provided the district court with documents from Volvo's production and the only evidence which showed the accused Volvo Seat in operation.  (A882).

_____

[1] In its opposition paper Lugus moved to strike Volvo's use of Exhibit 5 (A634) to the Isaksson Declaration under Rule 56.  (A814).  Lugus did not respond to this argument.  (A966-A984).  The District Court makes no mention of and did not rely on this Exhibit 5 (A634).  As the motion was unopposed and the District Court made no use of Exhibit 5 (A634), Lugus assumes that Volvo is not relying on this document in support of its motion.  Lugus will continue to rely on the complete version of this document (A955) to rebut Volvo's unsupported statements regarding the operation of the Volvo Seats.

Volvo agrees that the video applies to all models and model years 2005 current (Volvo has stated that 'design and configuration of [Volvo's] one-stage and two-stage integrated booster seats' is the same in each of the accused model years. A792). The image below (a still taken from the video) shows a seat bottom of the accused Volvo Seat in so-called "1st" position, a child seat. *Id.*



*Id.*

This next still shows the moment the latch is triggered with an upward pull, initiating the automatic retraction.  *Id.*



*Id.*

The next still shows the child seat has "sprung" down to its stowed position as part of a fully contoured adult seat.  *Id.*



*Id.*

This video (A882) is the only evidence before the district court of the physical operation of a Volvo Seat.

## SUMMARY OF THE ARGUMENT

Volvo sought judgment under two bases for noninfringement and the District Court granted both, finding that: "Under the adopted constructions of these claim terms, Volvo's accused product does not automatically retract to form part of a fully contoured adult seat, nor does the accused product retract when a child is removed from the seat."  (A73).

The District Court's construction of the term "when" contains a temporal limitation taken to an extreme - requiring a seat to automatically retract, and to do so <u>only</u> when a child is removed.  This construction is: (i) contrary to the claim language itself, which focuses on the ability of the child seat to retract during the

period of time when no child is located on the seat (not on the instant the child is "removed"); (ii) contrary to the prosecution history of the '926 Patent; (iii) admittedly imports a limitation from a preferred embodiment contrary to law; and (iv) does so by misreading the '926 Patent to create a limitation in the preferred embodiment that does not exist.   When properly construed, the Volvo car seats meet the "when" limitation.

The district court reached its conclusion that Volvo's car seats do not meet the "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat" limitation based upon a flawed application of the claims to the Volvo seats and based upon an improper weighing of the evidence.  In fact, the district court ignored the most relevant evidence—a video demonstrating how its seats operate.  (A882.)  That video shows that, once a user releases a latch on an unoccupied child seat, the seat automatically (without any user manipulation) retracts into a portion of the adult seat.  After it automatically retracted, the seat can be pushed down further and locked into place. But this additional user locking action does not preclude infringement.  As shown in the video, prior to being locked, the Volvo child seat forms "a portion of said adult seat."  And even if the claims require that it also at that point (prior to any manual locking) form "part of a fully contoured adult seat," Volvo still meets the claim.  The preferred embodiment illustrates an example of a child seat forming

part of a fully contoured adult seat.  And Volvo's child seat operates similarly.

Moreover, Volvo described the claim requirement to the District Court by saying:

"When you convert this seat, *you put it in a position that can be used by an adult. That's what it is.* It fully retracts *into a position for adult use that can be used by adult*."  (A382 at 13-24 (emphasis added)).  The video demonstrates that the seat is

"in a position that can be used by an adult."

The district court identified the incorrect structure corresponding to the "retracting means" limitation.  The "corresponding structure" imported from the specification under 35 U.S.C. § 112(f) should be the structure that retracts the child seat, not the child seat itself.  The district court's corresponding structure includes the surfaces of the child seat.  Moreover, the district court's "corresponding structure" imports non-structural limitations, such as the following language related to the use and functions of the structures:  "such that the bottom surface of the pivoting back portion 18 forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion 18 can form a seat portion of a child safety seat."  (A56.)

Finally, the district court's finding that there can be no equivalents under the doctrine of equivalents should be vacated because it is based on a flawed application of the patent claims.

13

# ARGUMENT

## I.    Standard of Review

Claim construction is an issue of law for the court that is reviewed de novo on appeal, including any fact-based issues that may arise. *Lighting Ballast Control LLC v. Philips Electronics North America Corp.*, 744 F.3d 1272, 1276-77 & 1286 (Fed. Cir. 2014) (*en banc*).

Grants of summary judgment are reviewed de novo. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1378 (Fed. Cir. 2010). "Summary judgment is only appropriate when there is 'no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c). All reasonable inferences are drawn in favor of the non-movant, and the evidence is viewed in the light most favorable to the non-movant." *Id.* at 1378-79 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II.    The District Court Erroneously Granted Summary Judgment of Non-Infringement Based upon the "Retracting Means" Limitation

The district court's summary judgment ruling is based on the following language in claim 1: "retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat." The district court

14

found this entire phrase to be in means-plus-function format and governed by 35 U.S.C. § 112(f)  (A81 at 4:39-42; A29-34.)  On summary judgment, the district court agreed with Volvo that it does not infringe these limitations because Volvo's booster seats allegedly do not automatically retract when a child is not located in the seat, and because Volvo's booster seats allegedly do not automatically retract into a fully contoured adult seat.  (A67-68.)

The district court's summary judgment should be reversed because the district court misinterpreted the claim and resolved genuine disputes of material fact in favor of Volvo.

> **A.    The District Court Erred in Finding No Infringement Based Upon Volvo's Argument that Its Booster Seats Do Not Automatically Retract When a Child is Not Located In the Seat**
>
> **1.    The District Court Incorrectly Construed the "When said Child Is Not Located in Said Safety Seat" Language in the "Retracting Means" Limitation**

Claim 1 recites a seat with structures for "automatically retracting" the child safety seat "to form part of a fully contoured adult seat when said child is not *located in* said child safety seat."  (A81 (emphasis added).)  The district court's construction of "when" recasts this limitation to mean that the seat *must* automatically retract *only* at the instant a child is *removed* from the seat.  This

construction contradicts the claim language and prosecution history, and it imports a preferred method of operation into an apparatus claim.

During claim construction Lugus argued that the "to form part of a fully contoured adult seat when said child is not located in said child safety seat" language is not part of the "retracting means" limitation and instead modifies the entire body of claim 1. (A131, A285-86.) Lugus proposed that "when" be construed to mean, "at or on which." (A135-36.) Volvo countered that "when" means "at the time that." (A174.) And the district court construed "when" to mean "in the event that." (A40.) It explained that its construction "comports" with the patent's written description, which, according to the district court, discloses that though child seat "may 'want' to automatically retract, it may only automatically retract at the time that the pressure from the child is removed." (A40.)

But because the district court did not explicitly state that its construction of "when" ("in the event of") effectively limited the claim to its understanding of the preferred embodiment, it was unclear whether the district court intended its construction to mean (1) that the claimed booster seat must always automatically retract, and do so only at the instant a child is removed from the seat; or (2) that the claimed booster seat must be capable of automatically retracting "in the event" that a child is not located in it. If the former, then Lugus conceded there was no

infringement, (A802, A810); and if the latter, then Lugus argued summary judgment should be denied, (*id.*).  In granting summary judgment, the district court made clear that its construction "incorporates" its understanding of the preferred embodiment:  *i.e.*, that the child seat automatically retracts at the moment—and only at the moment—that a child is "removed" from the seat.  (A68-69.)

The district court's construction is flawed for four reasons.

First, it is inconsistent with the claim language.  If, as found by the district court, "when" is a temporal restriction modifying "automatically retracting," then the claim merely requires that the seat be configured to automatically retract *at some point* when the "child is not *located*" in the seat, (A81 at 4:42 (emphasis added))—not at the moment the child is "removed" from the seat, as required by the district court, (A69).  This distinction is important because the ordinary meaning of "when" reflects that—depending upon the context—the term can refer either to an instant in time or a block of time.  In the dictionary relied upon by Volvo and the district court, the preferred meaning of "when" is, "at or *during the time that* . . . ." (A157 & A271 (emphasis added).)  The patent describes its preferred seat as retracting when "handle 52 is pulled outward and the child is removed . . . ."  (A81 at 3:28-29.)  But it used the broader "not located in" language in the claim.  The patentee's choice to use this broader language should be given effect, and "when" should be given its full ordinary meaning.

Second, the construction is inconsistent with the prosecution history.  Volvo and the district court agree that during the application process the patentee "re-wrote independent claim 1 to include the limitations of original claims 2, 9 and 10," which includes the "automatically" limitations at-issue on this appeal.  (A570-A571); *see also* A72, A235-36.)   The original dependent claim 9, recited a child seat that "is automatically *retractable* when said child is not located in said seat."  (A223 (emphasis added).)  This limitation—which Volvo and the district court agree is now incorporated into the "when" limitation in issued claim 1—focused on the *capability* of the seat to automatically retract when no child is present in it.  It does not require the seat to *always or only* retract the instant when a child is removed.

Third, the district court improperly read a preferred method of operation into apparatus claim 1.  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (listing cases rejecting attempts to import limitations from the specification).  It cited to, for example, the patent specification's statement that the seat retracts "when the handle 52 is pulled outward and the child is *removed* from the seat back portion 18."  (A81 at 3:28-30 (emphasis added); A39.)  That description ties the retraction to two events:  pulling the handle (which releases the seat belt) and the *removal* of the child.  But claim 1 does not tie the seat's retraction to pulling the handle or to the removal of the child.  Rather, the

seat merely has to be capable of retracting at some point when the "child is not

*located*" in the seat.  (A81 at 4:42.)  The district court also relied on one of several

objectives of the invention.  (A39.)  But "[t]he fact that a patent asserts that an

invention achieves several objectives does not require that each of the claims be

construed as limited to structures that are capable of achieving all of the

objectives."  *Liebel-Flarsheim*, 358 F.3d at 908.  In short, nowhere do those

specification cites redefine or disclaim the plain and ordinary meaning of "when

said child is not located in" the

safety seat.



Fourth, even if the preferred

embodiment did limit the claims (it

does not), the district court's

construction is based on a

misreading of the preferred embodiment.  Nowhere, does the specification imply,

let alone state, that the child seat "*only*" retracts at the moment a child is removed

from it, (A68-69; A40), or that it *must* retract *every time* a child is removed.

Although the patent discloses that the weight of a child can hold the deployed child

seat down, some other force—such as an adult hand or a weight—could hold the

booster seat down instead of a child.  Indeed, the patent states that an adult pulls

the seat down to deploy it.  (A81 at 4:6-8.)  And as illustrated in Figure 2

(reproduced to the right), once the seat is deployed, the T-shaped handle 52 (via the projecting end portion 46 of spring-loaded plunger 48) holds the seat in place by holding the bottom of seat belt fastener 40 in place.  (A81 at 3:9-21, 3:35-49; A79.)   Volvo agrees.  It stated that "[t]he lower portion of the *safety seats* are [] *held into position* by the projecting end of the T-Shaped plunger . . . ."  (A572 (emphasis added).)  The preferred embodiment is thus capable of (1) being deployed without a child sitting in it (by an adult's hand); (2) remaining deployed by fastening the seat belt on the seat; and (3) retracting without a child being "removed" from it.  Indeed, if the force from the same adult hand that deployed the seat, (A81 at 4:6-8), also held the seat down after a child was removed, the seat obviously would not retract.

This Court should instruct the district court to construe "when said child is not located in said child safety seat" to encompass child seats configured to automatically retract at any point while a child is not located in it.

## 2. Volvo's Retractable Child Seats Meet the "When said Child Is Not Located in Said Safety Seat" Language in the "Retracting Means" Limitation

Volvo's accused child restraint seats meet the "automatically retracting" and "when said child is not located in said child safety seat" language.

The district court construed "automatically" as having its "plain and ordinary meaning," (A43 & A56), which it explained was "generally understood as

some kind of 'self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation.'" (A36 (quoting A150 & A270) (emphasis added); A69.) Volvo's seats meet this definition. As in the patent, the Volvo Seats will not retract until two conditions are met: (1) any child or other force placed upon the seat is removed; and (2) a latch/button is pulled/pushed, thus releasing the seat. (A958). Once those conditions are met, the mechanical structures attached to the seat begin to retract it. *Id*. In short, the seat is a "self-acting . . . mechanism that performs a required act [*i.e.*, retraction] at a predetermined point in an operation [*i.e.*, after the latch is pulled, so long as no child is in the seat]."

That automatic retraction occurs "when said child is not located in said child safety seat." Indeed, if a child is sitting in a Volvo child seat, the seat will not retract until the child is removed—even if the button on the seat is pushed. Volvo's internal documents confirm this. The Volvo Seats (internally referred to as "IBC"'s) have an "adult" and "1st" position (and sometimes a "2nd" position), where the latter are child seating positions. (A958). As stated in this Volvo technical document: "if the button is pushed and there after released while the IBC [seat] is occupied, the seat shall remain locked in its first position":



*Id.*

### III. The District Court Erred In Its Construction And Application Of "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat"

#### A. The District Court's Construction

The district court has interpreted the term "retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat" as follows:

| Term | Function | Structure |
|------|----------|-----------|
| "retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat." | "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat."<br><br>-"automatically" is construed as having its plain and ordinary meaning<br><br>-"when" is construed as "in the event that" | Contracting piston 56, including the forward portion 58, rear portion 60, and piston rod 62; pivoting back portion 18, including rear portion 64, bushing 84, bolt 86, downward projection 88, bushing 90, and bolt 92; seat frame 94; bushing 96; and bolt 98, such that the bottom surface of the pivoting back portion 18 forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion 18 can form a seat portion of a child safety seat. |

(A53). As noted above, the district court adopted the plain meaning of "automatically" in accordance with the cited dictionary definition, stating: "the term is generally understood as some kind of "self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation." (A36, citing to A148-150). Lugus is accepting of this construction, though not as further modified by the District Court.

23

The district court also construed "into a portion of said adult seat to form part of a fully contoured adult seat" as having its plain meaning and included this phrase "as part of the function in this means-plus-function term." (A37).

### 1.    The Preferred Embodiment Of The '926 Patent

The phrase "fully contoured adult seat" appears only in Claim 1 of the '926 Patent. (A81 at col. 4:36-43). However, as shown below, the specification clearly describes the preferred embodiment that must fall under this Claim 1 (there has never been any contention that the described embodiment does not meet the limitations of Claim 1). All references to the "adult" seat the '926 Patent refer to Fig. 1, not just for illustration, but also as example. The '926 Patent states as follows:

- "As illustrated, the convertible vehicle child safety seat 10 has two identical seats located side by side that are designated generally by the numbers 12 and 14 that are contained in or supported by a conventional combined support unit 16. The seat 12 illustrates the seat in its deployed position for a child and the seat 14 illustrates the seat in its undeployed position for use as an adult seat." (A81 col. 2: 54-60).

- "As illustrated for the seat 14, with the seat back portion 18 in its upward position the child safety portion is stored behind the seat back portion 18 and this permits the seat 18 to be used in a normal fashion by an adult passenger." (A81 at col. 3: 30-34).

- "the seat assumes the position illustrated in FIG. 1 for the seat 14 to allow normal seating of an adult passenger." (A81 at col. 4:27-28.)

As shown above, in all references to the "adult" seat the '926 Patent refers to Fig. 1.



FIG. I

(A81, Fig. 1).

In this embodiment, Fig 1. shows seat 14 with the pivoting back portion 18 extending out from the recess shown in seat 14.  *Id*.  Further, the recess provided in seats 12 and 14 for pivoting back portions 18 is angled while the pivoting back portion 18 has a rectangular cross section.  *Id*.  This can be seen in the highlighted portion of Fig. 1 provided below.



*Id.* (emphasis added).  This is not an issue of lexicography – simply that in whatever way the plain and ordinary meaning of this term is construed, there is no justification for reading out the disclosed embodiment of Fig. 1.  In *GE Lighting Solutions, LLC. v. AgiLight, Inc.* (May 1, 2014), this Court rejected an attempt to read out an embodiment shown in a figure of the subject patent.  This Court stated that: "We normally do not construe claims in a manner that would exclude the preferred embodiment, especially where it is the only disclosed embodiment."  *Id.* At 10 citing *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333

(Fed. Cir. 2007).  This Court has also "held that 'a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.'", *Accent Packaging, Inc. v. Leggett & Platt, Inc.* (Fed. Cir. Feb. 4, 2013) (quoting *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004)).  Further, "where claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary." *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008).

There is no evidence in the record, not does any exist that would exclude Fig. 1 of the `926 Patent from coverage under Claim 1 of the '926 Patent.  Thus, the plain and ordinary meaning of "fully contoured adult seat" must at least encompass the embodiment of Fig. 1.

### 2. Volvo Has Conceded That A Fully Contoured Adult Seat Is One That "Can Be Used By An Adult."

A "fully contoured adult seat" does not have a specific shape under the '926 Patent, it simply is a seat that can be used by an adult.  This is supported by the specification of the '926 Patent and Volvo has admitted the same.

Volvo's position (which appears to have been adopted by the District Court) is as follows: "This Patent has nothing to do with molding or the shape of the seat. Just has to deal with it automatically retracting from a child position to an adult

position. How it's molded is not what this is claiming to." (A382 at 10-11). Lugus concedes to this interpretation.

Volvo went on to say: "What this claim term means is that it automatically retracts from a child position all the way into a fully contoured adult seat. And on Slide 35, the specification of this patent shows exactly that. In the summary of the invention, the patent repeatedly talks about automatically converting the seat for adult use. When you convert this seat, *you put it in a position that can be used by an adult. That's what it is.* It fully retracts into *a position for adult use that can be used by adult*. It says in the detailed description invention. It retracts to allow normal seating of an adult passenger." (A382 at 13-24 (emphasis added)).

Such an understanding is also acceptable to Lugus.

### B. The Volvo Seat Infringes The Limitation "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat"

#### 1. The District Court Failed To Recognize Important Disputed Facts and Interpretations

The district court took a significant departure from "plain and ordinary meaning" when it applied this principle to the '926 Patent and the Volvo Seat. The district court's first significant error is from this statement it makes in introduction to its infringement analysis: "In view of these constructions, there is no dispute that Volvo's accused product, when transitioning from its child to adult settings,

requires a manual intervention to lock the Volvo Seat into the adult configuration in order to form a portion of the fully contoured adult seat." (A70). **Lugus has never agreed to this and disputes this statement.** The district court cites <u>no evidence</u> supporting this conclusion, which presents some difficulty in refuting its basis. *Id*. However, there is certainly nothing in Claim 1 that requires "locking" into "an "adult configuration." (A81 at col. 4:36-43). The district court concluded that this locking was required "in order to form a portion of the fully contoured adult seat." (A70). Lugus has never agreed that this "locked" position is the only "adult configuration" that allows the formation of a "fully contoured seat."[2] *Id*.

The district court then applies its claim construction to the evidence in a single sentence, citing to only the documents accompanying the declaration of Per Isaksson, a Volvo employee[3]: "Unlike Claim 1 of the '926 patent, the seat-bottom

---

[2] Even if the "locked" configuration were the only configuration being compared to a "fully contoured adult seat" - Lugus does not believe that the mere act of locking the Volvo Seat in adult configuration, even if it requires manual pressure, would preclude infringement.

[3] Lugus continues to believe that the Isaksson Declaration (A792) should be struck (which would remove all evidence relied upon by Volvo and the district court). Volvo filed its summary judgment motion using the declaration of Pia Landby to provide all cited evidence of infringement. (A594, A610). It is not in dispute that Pia Landby was not disclosed to Lugus as required by Rule 37(c)(1). Rule 37(c)(1) is not permissive. It is an absolute that "[i[f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). This issue was raised with the district court which allowed Volvo to provide a substitute declaration from Mr. Isaksson and refused to delay Lugus's opposition to the pending summary judgment motion. (A65, fn. 3). To avoid sanctions, Volvo has "the burden of showing [its] actions were substantially justified or harmless." *Horton v.*

segment of Volvo's seat does not transition from its child setting to its adult setting under a self-actuating procedure; rather, a user must manually press the Volvo Seat-bottom from the elevated child position into the stowed adult position." (A70 citing to A792). Volvo's declarant was silent on the retraction process of the Volvo Seats. (A792). Volvo acknowledged this and called the sole declarant's silence "irrelevant." (A973). As discussed in more detail below, Volvo's description of its documents is – *in fact* – not how the Volvo Seat operates and the district court failed to even mention the only evidence before it that showed an actual Volvo Seat retracting.

---

*Hussman/Ingersoll-Rand Co.*, 4:05-cv-00065-DDN (E.D. Mo. July 19, 2006), citing *In re Air Crash Near Kirksville, Mo. on Oct. 19, 2004* , No. 4:05MD1702 JCH, 2007 WL 2363505, at *4 (E.D. Mo. Aug. 16, 2007). Volvo has done neither. Volvo's sole justification is as follows: "Volvo replaced Ms. Landby's declaration only to avoid an issue (as the Court requested) because Mr. Isaksson was identified in Volvo's initial disclosure. And, the only reason that Volvo submitted a declaration from Ms. Landby's declaration was because she had taken over Mr. Isaksson's job responsibilities during the case." (A981, footnotes removed). Volvo had the opportunity to meet this burden and chose to say little. Further, "delays in disclosure are not substantially justified if they could have reasonably been avoided." *Id.*, citing *CNH Capital Am. LLC v. McCandless*, No. C05- 2087, 2007 WL 1830819, at *4 (N.D. Iowa June 22, 2007); *see. e.g., Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323-24 (C.D. Cal. 2004) (refusing to consider declarations submitted on summary judgment because, inter alia, the witnesses were not disclosed as required under Rule 26(a)). Volvo delayed weeks after it knew of the issue and failed to meets its burden to avoid sanctions. The Isaksson Declaration (A792) should be struck.

a.    **The District Court Did Not Reference, Cite, Discount Or In Any Way Acknowledge The Existence Of The Only Evidence Of Record Showing An Actual Accused Volvo Seat (Which Evidence Directly Refutes The District Court's Conclusions)**

The district court's short analysis and conclusion of no infringement, ostensibly applying a plain meaning approach, can be demonstrated disproved.

- The district court stated: "In view of these constructions, there is no dispute that Volvo's accused product, when transitioning from its child to adult settings, requires a manual intervention to lock the Volvo Seat into the adult configuration in order to form a portion of the fully contoured adult seat." (A70 at 14). **This is demonstrably incorrect.**

- The district court further concluded that: "Unlike Claim 1 of the '926 patent, the seat-bottom segment of Volvo's seat does not transition from its child setting to its adult setting under a self-actuating procedure; rather, a user must manually press the Volvo Seat-bottom from the elevated child position into the stowed adult position." *Id.* **This is demonstrably incorrect.**

This notion that the Volvo Seat requires manual pressure to move from the elevated child position to the adult position comes directly from Volvo's characterization of its documentary evidence. Volvo contended in in its Motion for Summary Judgment that "a user must manually press the Volvo Seat-bottom from the elevated child position into the stowed adult position. (A619, A624, A629, A633). This Court accepted this position stating that "a user must manually press the Volvo Seat-bottom from the elevated child position into the stowed adult position." A70.

This is quite simply not true.  Lugus put into evidence a video of an actual accused Volvo Seat assembly in operation.  (A879-A881, A882).  Lugus cited to this video four (4) times in its Plaintiff's Brief in Opposition to Defendants Volvo Car Corporation and Volvo Cars of North America, LLC's, Motion for Summary Judgment.  (A818, A825, A826, A827).  Lugus played the video for the district court.  (A408 at 15-16)  **The district court made no mention of this evidence in its Opinion**.

The video evidence Lugus presented shows that the Volvo Seat springs downward automatically "from the elevated child position" with the click of the latch.  (A882).   No continual manual press is required from the "elevated child position."  *Id*.   The image below (a still taken from the video) shows a seat bottom of the accused Volvo Seat in so-called "1st" position, a child seat.  *Id.*



*Id.*

This next still shows the moment the latch is triggered with an upward pull, initiating the automatic retraction. *Id.*



*Id.*

The next still shows the child seat has "sprung" down to its stowed position as part of a fully contoured adult seat. *Id.*



*Id.*

While the video clearly displays the automatic retraction (one can even hear the mechanism launch the seat into its retracted position), the stills also show that *this automatic retraction occurred in no more than one (1) second and that there is no manual pressure applied.* *Id.* **This is the only evidence before the district court of an actual accused Volvo Seat.** There has been no video, actual seat or other physical evidence entered by Volvo.

It is hard to imagine how two such different understandings of the operation of the Volvo Seat can arise. Volvo has been attempted to sell its version of the operation of the Volvo Seats as "manual" since the Markman hearing, in which Volvo described the retraction of its seats: "So what you do is you pull that lever again, because you've got to unlock it, and then the owner's manual clearly shows, you have to manually press it down, to lock it in position." (A366 at 20-23). In

furtherance of Volvo's construct, Volvo also showed the district court a video, a video which was later pulled from Volvo's summary judgment briefing and is no longer in evidence (for good reason). However, Volvo's description of this video from the Markman hearing is telling: "The user has to manually pull the lever and then push the seat down. We talked about the amount of force, but it doesn't really matter, but you can see even in the video, I had to use two hands to push it down. I couldn't do it with one." (A369:24 to A370:6). Lugus clicks the latch and the seat automatically shoots into stowed position. (A882). Volvo allegedly takes a seat with the same mechanism and their lawyer claims he needed to manually push the seat down using both hands it was so hard. (A369:24 to A370:6). Normally this would be a classic factual dispute. However, in this case, Volvo pulled its video from evidence and Lugus's video is the only remaining evidence showing an actual Volvo Seat in operation.

Volvo (and the district court) relied solely on the declaration of its employee and technical documents. These documents are car manuals provided to purchasers of Volvo vehicles. In fact, none of the documents cited by Volvo and relied upon by the district court state that "a user must manually press the Volvo Seat-bottom *from the elevated child position into the stowed adult position*. SJ (A69 (emphasis added) citing (A619, A624, A629, A633). These documents may describe the general procedure, but not a single one says anything about manually

pressing from the elevated child position. *Id.* While the parties clearly disagree on what these documents are disclosing (which was ignored by the district court), it bears stating that Lugus did not accuse user manuals of infringement. Lugus accused actual seats and provided evidence of their operation to the district court.

**b.     The Volvo Seat In Evidence Demonstrates An Automatic Retraction To A Fully Contoured Adult Seat**

The Volvo Seat shown below has retracted into a fully contoured adult seat by operation of its internal spring mechanism. (A882)



*Id.*

Does some small portion of the child seat extend above some of the top surface of the adult seat? Yes. Just as some portion of the pivoting back portion 18 of Fig. 1 of the '926 Patent extends beyond the top surface of the adult seat 14. (A78). Does a much larger portion of the child seat extend below the top surface

of the adult seat?  Yes.  The video shows that the child seat has retracted into a "***portion*** of said adult seat" and, indeed, forms "***part of*** a fully contoured adult seat."  (A882).

Most importantly, under a plain and ordinary meaning analysis, the video shows in the still above a "fully contoured adult seat."  (A882).  Volvo took the position that under a plain meaning analysis this clause can be satisfied when the retraction can "put it [the seat] in a position that can be used by an adult."  (A382 at 16-22).  An adult can sit in the seat shown above, and, therefore use the seat. (A882).  Volvo chose to not comment in the briefing for Summary Judgment on the Lugus video and its interpretation by Lugus.  Volvo had an opportunity to dispute this video and chose not to do so.

It is unclear why the district court concluded that locked is required for the Volvo Seat.  (A70).  The seat shown in A882 in the above still can plainly be used by an adult.  (A882).  There is certainly no evidence of record to contradict this.

As shown above, the accused Volvo Seats automatically retract to a fully contoured adult position and meet the limitations of Claim 1.

## IV.   The District Court Misidentified the Corresponding Structure for the "Retracting Means" Limitation

Neither Volvo nor the district court relied on the district court's determination of the structure corresponding to the "retracting means" limitation for purposes of summary judgment.  Nevertheless, because the district court's

37

other constructions of the "retracting means" limitation formed the basis for

summary judgment, Lugus respectfully suggests that efficiency dictates addressing

the district court's identification of corresponding structure, which was:

> Structure:  Contracting piston 56, including the forward
> portion 58, rear portion 60, and piston rod 62; pivoting
> back portion 18, including rear portion 64, bushing 84,
> bolt 86, downward projection 88, bushing 90, and bolt
> 92; seat frame 94; bushing 96; and bolt 98, such that the
> bottom surface of the pivoting back portion 18 forms a
> fully contoured adult seat in the raised position and the
> top surface of the pivoting back portion 18 can form a
> seat portion of a child safety seat.

(A56).

The error in the district court's construction is that it imported too many

structural features from the specification into the claim. The district court

identified the claimed function as, "automatically retracting said child safety seat

into a portion of said adult seat to form part of a fully contoured adult seat when

said child is not located in said child safety seat." (*Id.*)  The "corresponding

structure" imported from the specification should be the structure that retracts the

child seat, not the child seat itself. *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d

1364, 1371 (Fed. Cir. 2001).  That structure is the contracting piston 56, illustrated

below:



*FIG. 3*

(A79.)

The other structures, such as the surfaces of the seat (back portion 18) and frame 94, are extraneous features.

Moreover, the district court's identification of forward portion 58 and rear portion 60 of piston 56 is incorrect because those portions are not structures—simply identifiers in the patent of the regions of the piston.

Finally, the district court's inclusion of the following language is problematic because it is not structure: "such that the bottom surface of the pivoting back portion 18 forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion 18 can form a seat portion of a child safety seat." (A56.)

## V.    The District Court's Doctrine of Equivalents Ruling Should be Vacated

If the Court agrees with Lugus that the district court misconstrued the "retracting means" limitation and the operation of Volvo's accused seats, then the district court's finding that there can be no infringement under the doctrine of equivalents should be vacated.

The district court had already construed the claims by the time Lugus responded to Volvo's motion for summary judgment.  As Lugus made clear in its opposition, if the district court's construction applied its claim construction as narrowly as suggested in the district court's claim construction opinion, then Lugus conceded there was no infringement. (A810.)  But under a broader construction, there could be.  And, depending upon the breadth of the construction, whether a feature is literally covered, or is potentially an equivalent, will vary.

It is only after that potential equivalent is identified that one can determine whether a presumptive surrender of equivalents has been overcome.  For example, one of the ways to overcome the presumption is to establish that "the rational underlying the narrowing amendment bore no more than a tangential relation to *the equivalent at issue*."  *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1140 (Fed. Cir. 2004) (emphasis added).  The alleged "equivalent at issue" must first be identified before this analysis can take place.

## <u>CONCLUSION</u>

The district court's improper construction of the "retracting means" language should be reversed, and the judgment of noninfringement should be vacated and remanded for further proceedings on all issues including infringement, consistent with the proper constructions of those terms.

Respectfully submitted,

/s/ John R. Fuisz
John R. Fuisz
THE FUISZ-KUNDU GROUP LLP
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C.  20004
Tel.: (202) 621-1889
Fax: (202) 652-2309

*Counsel for Appellant*

# **ADDENDUM**

# ADDENDUM
## TABLE OF CONTENTS

**PAGE**:

Stipulated Confidentiality Order,
        filed December 14, 2012 ........................................................Add. 1

Claim Construction Opinion
        filed May 20, 2014..............................................................Add. 18

Claim Construction Order
        filed May 20, 2014..............................................................Add. 54

Opinion
        filed July 23, 2014 ..............................................................Add. 57

U.S. Patent No. 5,806,926
        dated September 15, 1998 ..................................................Add. 77

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LUGUS IP LLC, | ) | Civil Action No. 12-2906 (DMC) (JAD) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| VOLVO CAR CORPORATION and | ) | *DOCUMENT SUBMITTED* |
| VOLVO CARS OF NORTH AMERICA, | ) | *ELECTRONICALLY* |
| LLC | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATED DISCOVERY CONFIDENTIALITY ORDER**

WHEREAS Plaintiff Lugus IP LLC ("Lugus") and Defendants Volvo Car Corporation and Volvo Cars of North America, LLC (collectively "Volvo") (collectively referred to herein as the "Parties") are currently litigating the present patent infringement action, which is likely to involve discovery of documents and testimony containing trade secrets and other confidential research, development and commercial information of the parties to this action and third parties who may be subpoenaed to provide deposition testimony and documents, including confidential and commercially sensitive information relating to business strategies, manufacturing and distribution capabilities, sales, costs, pricing, profitability, customers, suppliers, and other business and financial data; and

WHEREAS this confidential information may be disclosed in providing initial disclosures, responding to written discovery requests, providing testimony by way of deposition, or otherwise in these proceedings, and must be protected in order to preserve the legitimate business interests of the parties, and

**-Add. 1-**

WHEREAS good cause exists for entry of this Order, *see* Fed. R. Civ. P. 26(c), *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); and

WHEREAS all parties in their business practices have gone to great lengths to safeguard and protect the confidentiality of the documents and information and the disclosure of which would pose a substantial risk of irreparable harm to the producing party's legitimate proprietary interests; and

WHEREAS in support of their request for the entry of this Discovery Confidentiality Order, the parties submit the Declarations of John Fuisz, Esq., on behalf of Lugus, and Goran Widborn, on behalf of Volvo, which explain why each party believes entry of this Order is necessary; and

Lugus and Volvo hereby agree to, and the Court hereby enters, the following Discovery Confidentiality Order:

1.     Any party to this litigation and any third-party shall have the right to designate as "Confidential" and subject to this Order any information, document, or thing, or portion of any document or thing: (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information, or (b) that contains private or confidential personal information, or (c) that contains information received in confidence from third parties, or (d) which the producing party otherwise believes in good faith to be entitled to protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and Local Civil Rule 5.3.  Any party to this litigation or any third party covered by this Order, who produces or discloses any Confidential material, including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony, shall place on each page (or electronic file or medium containing electronic file(s)) and each thing (including electronic,

2

**-Add. 2-**

optical, magneto-optical, magnetic, etc. media) to which the designation applies a legend substantially as follows: "CONFIDENTIAL" or "CONFIDENTIAL– SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER" (hereinafter "Confidential Material"). The parties agree that information already produced in this case under Local Patent Rule 2.2 and designated under that rule shall be afforded the protections of this Discovery Confidentiality Order.

2.      All Confidential Material shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in Paragraph 3, unless and until the restrictions herein are removed either by written agreement of counsel for the producing party or by Order of the Court.  It is, however, understood that counsel for a receiving party may give advice and opinions to his or her client solely relating to the above-captioned action based on his or her evaluation of Confidential Material, provided that such advice and opinions shall not reveal the content of such Confidential Material except by prior written agreement of counsel for the producing party, or by Order of the Court.

3.      Confidential Material and the contents of Confidential Material may be disclosed only to the following individuals under the following conditions:

(a)      Outside counsel engaged in this matter (herein defined as any attorney at the Parties' outside law firms);

(b)      Experts or consultants retained by outside counsel for purposes of this action, and only to the extent the Confidential Material is germane to the expert's or

consultant's scope of engagement in this action, provided they have signed the Undertaking in the form attached hereto as Exhibit A;

(c)    Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

(d)    The Court and court personnel;

(e)    Any deponent may be shown or examined on any Confidential Material that the witness authored or received a copy of, or is employed by the party who produced the Confidential Material, or if the producing party consents to such disclosure; and

(f)    Vendors retained by or for the Parties to assist in preparing for pretrial discovery, trial and/or hearings including, but not limited to, court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials.

4.    Confidential Material shall be used only by individuals permitted access to it under Paragraph 3 and then only for purposes of this action.  Confidential Material, copies thereof, and the information contained therein, shall not be disclosed in any manner to any other individual, until and unless (a) outside counsel or In-House Counsel for the producing party waives the claim of confidentiality, or (b) the Court orders such disclosure.

5.    With respect to any depositions that involve a disclosure of Confidential Material of a party to this action, such party shall have until five (5) calendar days after receipt of the final deposition transcript within which to inform all other parties that portions of the transcript are to

be designated Confidential, which period may be extended by agreement of the Parties.  No such deposition transcript shall be disclosed to any individual other than the individuals described in Paragraph 3(a), (b), (c), (d) and (f) above and the deponent during these five (5) calendar days after receiving the final deposition transcript from the court reporter, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in Paragraph 3(a), (b), (c), (d) and (f) above during said five (5) calendar days.  Upon being informed that certain portions of a deposition are to be designated as Confidential, all Parties shall immediately cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with Paragraphs 2 and 3.  Alternatively, counsel appearing at the deposition, including counsel for the deponent (if a third-party), contemporaneously may designate during the course of a deposition certain testimony as Confidential.

6.     If counsel for a party receiving documents or information designated as Confidential hereunder objects to such designation of any or all of such items, the following procedure shall apply:

(a)     Counsel for the objecting party shall serve on the designating party or third party a written objection to such designation, which shall describe with particularity the documents or information in question and shall state the grounds for objection.  Counsel for the designating party or third party shall respond in writing to such objection within three (3) calendar days, and shall state with particularity the grounds for asserting that the document or information is Confidential.   If no timely written response is made to the objection, the challenged designation will be deemed to be void.  If the designating party

5

**-Add. 5-**

or nonparty makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute.

(b)     If a dispute as to a Confidential designation of a document or item of information cannot be resolved by agreement, the objecting party shall present the dispute to the Court initially by telephone or letter pursuant to New Jersey Local Civil Rule 37.1(a).  If the requested change in designation is not agreed to or resolved via telephone/letter communications, the objecting party may move the Court for appropriate relief, providing notice to any third party whose designation of produced documents as Confidential in the action may be affected.  The designating party shall have the burden of proving that the information in question is within the scope of protection afforded by Fed. R. Civ. P. 26(c).  The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

7.     (a)     Unless otherwise ordered by the Court or agreed to in writing by the producing party, a party that seeks to disclose to an expert any Confidential Material shall execute the "Discovery Confidentiality Order Undertaking" in the form attached as Exhibit A. Opposing counsel shall be notified at least four (4) days prior to disclosure to any such person identified in Paragraph 3(b), and any person who is known to be an employee or agent of, or consultant to, any competitor of the party whose designated documents are sought to be disclosed.  Such notice shall provide (i) a reasonable description of the person to whom disclosure is sought sufficient to permit an objection to be made, and (ii) if a person identified in Paragraph 3(b), a copy of the expert's current resume that sets forth the expert's qualifications pursuant to Fed. R. Civ. P. 26(a)(2)(B)(iv) and previous testimony pursuant to Fed. R. Civ. P. 26(a)(2)(B)(v).  If a party objects in writing to such disclosure within four (4) days after receipt

6

**-Add. 6-**

of notice, no disclosure shall be made until the party seeking disclosure obtains the prior

approval of the Court or the objecting party.

(b)     If no agreement is reached, the party seeking to make the disclosure to the expert

shall present the issue to the court pursuant to New Jersey Local Civil Rule 37.1(a) prior to filing

a motion seeking permission from the Court to do.  Any such motion must describe the

circumstances with specificity, set forth in detail the reasons why the disclosure to the expert is

reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any

additional means that could be used to reduce that risk.  In addition, any such motion must be

accompanied by a competent declaration describing the Parties' efforts to resolve the matter by

agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth

the reasons advanced by the producing party for its refusal to approve the disclosure.  In any

such proceeding, the party opposing disclosure to the expert shall bear the burden of proving that

the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the

receiving party's need to disclose the Confidential Material to its expert.

8.     All documents filed with the Court are presumed to be public.  *See, e.g., Erwin v.*

*Waller Capital Partners LLC*, No. 10-3283, 2012 U.S. Dist. LEXIS 114169, at *2-4 (D.N.J.

Aug. 14, 2012) (citing *In re Cendant Corp.*, 260 F.3d 183, 192-94 (3d. Cir. 2001)).  All requests

to seal documents filed with the Court shall comply with New Jersey Local Civil Rule 5.3(c);

provided however, (a) the burden of proving to the Court that such material should be sealed

shall at all times remain with the party that initially disclosed the material and that designated the

subject material as Protected Material under the terms of this Order ("Designating Party"), (b) if

the party filing the protected material ("Filing Party") is not the Designating Party and is

unaware of the specific basis for the Designating Party's having designated the subject material

as Protected Material, then the Filing Party nonetheless is obligated to make a reasonable effort

when filing the subject material to seal such material.  In the event the Filing Party takes

exception to any designation of the subject material by the Designating Party, then the Filing

Party shall seek relief from such designation pursuant to the procedures set forth in this Order

9.	If the need arises during trial or at any hearing before the Court for any

party to disclose Confidential Material, it may do so only after giving notice to the producing

party.  This provision does not apply to the use of Confidential Material for purposes of cross-

examination.  Any party using any Protected Material in any court proceeding ("Filing Party")

shall simultaneously file a Motion to Restrict Public Access in accordance with the procedures

set forth in New Jersey Local Civil Rule 5.3(c); provided however, (a) the burden of proving to

the Court that such access should be restricted shall at all times remain with the Designating

Party, (b) if the Filing Party is not the Designating Party and is unaware of the specific basis for

the Designating Party's having designated the subject material as Protected Material, then the

Filing Party nonetheless is obligated to make a reasonable effort to restrict public access to such

material.  In the event the party seeking to use the Protected Material in the court proceeding

takes exception to any designation of the subject material by the Designating Party, then the

Filing Party shall seek relief from such designation pursuant to the procedures set forth in this

Order.

10.	Pursuant to Rule 502 of the Federal Rules of Evidence, the inadvertent disclosure

of protected communications or information shall not constitute a waiver of any privilege or

other protection (including work product) for the protected communications or information or the

subject matter of the protected communications or information if the producing party took

reasonable steps to prevent disclosure and also took reasonable steps to rectify the error in the

8

**-Add. 8-**

event of an inadvertent disclosure.  The producing party will be deemed to have taken reasonable steps to prevent communications or information from inadvertent disclosure if the producing party utilized attorney review, keyword search term screening, and/or linguistic tools in screening for privilege, work product or other protection.   In the event of the inadvertent disclosure of Confidential Material, the producing party shall be deemed to have taken reasonable steps to rectify the error of the disclosure if, within thirty (30) calendar days from the date that the inadvertent disclosure has been realized, the producing party notifies the receiving party of the inadvertent disclosure and instructs the receiving party to return promptly all copies of the inadvertently produced communications or information (including any and all work product containing such communications or information).  Upon receiving such a request from the producing party, the receiving party shall promptly return or confirm destruction of all copies of such inadvertently produced communications or information (including any and all work product containing such communications or information), and shall make no further use of such communications or information (or work product containing such communications or information).  Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client, work product or other designation of protection.   The protections against waiver afforded by the Order shall be applicable to the fullest extent allowed by Rule 502 of the Federal Rules of Evidence against both parties and non-parties to this action and in other proceedings in Federal and State courts.

11.     The obligation to create and provide privilege logs pursuant to FRCP 26(b)(5) shall not extend to attorney-client privileged communications with outside counsel engaged in this matter.  For avoidance of doubt, this paragraph does not excuse Plaintiff from logging any privileged communications related to the current action before the current lawsuit was filed.

**-Add. 9-**

12.    No information that is in the public domain or which is already known by the receiving party through proper means or which is or becomes available to a party from a source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Confidential Material under this Order.

13.    This Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground.  This Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms.

14.    If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" that party must:

(a)    promptly notify in writing the producing party. Such notification shall include a copy of the subpoena or court order;

(b)    promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order.  Such notification shall include a copy of this Order; and

(c)    cooperate with respect to all reasonable procedures sought to be pursued by the producing party whose Confidential Material may be affected.

(d)    If the producing party timely seeks a protective order, the party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the party has obtained the producing party's written permission.  The producing party shall bear the burden and expense of seeking

10

-Add. 10-

protection in that court of its Confidential Material – and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

15.     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL."  Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

16.     If a receiving party learns that, by inadvertence or otherwise, it has disclosed Confidential Material to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in writing the producing party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Confidential Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the Undertaking that is attached hereto as Exhibit A.

17.     Any natural person (including without limitation outside counsel and consultants) who accesses Confidential Material shall not, for duration of this litigation and a period of one (1) year following final resolution of this action (including any appeals), draft, supervise or assist in drafting, amending or prosecuting any patent claims or patent specifications which are directed to technology disclosed in any Confidential Material information actually received. This provision, however, does not limit or restrict Plaintiff's obligation to notify the USPTO of the existence of this patent litigation, prior art cited in this litigation, or any invalidity contention made by any Defendant that would give rise to a duty to disclose information to the USPTO.  For

11

**-Add. 11-**

purpose of meeting its disclosure obligations to the PTO, Plaintiff may disclose to the PTO any

such information that has been designated by any Defendant pursuant to this Discovery

Confidentiality Order after 30-days' notice to Defendants, provided Defendants do not object to

the disclosure within that time.  Should Defendants object to the disclosure, the Parties shall

meet and confer within 10 days of the objection.  If the Parties cannot resolve the dispute,

Defendants shall have 15 days from the meet and confer date to file a motion for a protective

order with the court, in which case Plaintiff will not disclose the disputed information to the PTO

unless and until such motion is denied.

18.    This Order shall survive the termination of this action and shall remain in full

force and effect unless modified by an order of this Court or by the written stipulation of the

pParties filed with the Court.

19.    Upon final conclusion of this litigation, including the exhaustion of all appeals,

each party or other individual subject to the terms hereof shall be under an obligation to assemble

and to return to the originating source all originals and unmarked copies of documents and things

containing Confidential Material, or to destroy all copies of Confidential Material that contain

and/or constitute attorney work product as well as excerpts, summaries and digests revealing

Confidential Material; and certify such destruction in writing to the producing party; provided,

however, that counsel may retain complete copies of all transcripts and pleadings including any

exhibits attached thereto as well as emails and attachments thereto sent/received in the ordinary

course, for archival purposes, subject to the provisions of this Order.  To the extent a party

requests the return of Confidential Material from the Court after  the  final conclusion of the

litigation, including the exhaustion of all appeals therefrom and all related proceedings, the party

shall file a motion seeking such relief.

**We hereby consent to the form
and entry of this Confidentiality Order.**

Dated:  December 13, 2012

By:  _/s Brian M. English_____          By:__/s Arnold B. Calmann_____

William H. Trousdale                         Arnold B. Calmann
Brian M. English                             Jakob B. Halpern
**TOMPKINS, MCGUIRE, WACHENFELD &**          **SAIBER LLC**
**BARRY LLP**                                One Gateway Center, Suite 1000
Four Gateway Center                          Newark, New Jersey 07102-5311
100 Mulberry Street                          Telephone:  (973) 622-3333
Newark, New Jersey 07102                      Facsimile:  (973) 286-2465
Telephone: (973) 622-3000
Facsimile: (973) 623-7780                     Matthew J. Moore (matthew.moore@lw.com)
                                             Daniel L. Shores (daniel.shores@lw.com)
John R. Fuisz                                **LATHAM & WATKINS LLP**
Sudip Kundu                                  555 Eleventh Street, N.W., Suite 1000
**THE FUISZ-KUNDU GROUP LLP**                 Washington, DC 20004-1304
1455 Pennsylvania Avenue, N.W., Suite 400    Telephone:  (202) 637-2200
Washington, D.C. 20004                       Facsimile:  (202) 637-2201
Telephone: (202) 621-1889                    *Attorneys for Defendants Volvo Car Corporation*
Facsimile: (202) 652-2309                    *and Volvo Cars of North America, LLC*
*Attorneys for Plaintiff Lugus IP LLC*

**For good cause shown, it is so ordered.**

Dated this _____ day of _____, 2012.

                                _____
                                **HONORABLE JOSEPH A. DICKSON**
                                **UNITED STATES MAGISTRATE JUDGE**

13

**-Add. 13-**

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

|  |  |  |
|---|---|---|
| LUGUS IP LLC, | ) | Civil Action No. 12-2906 (DMC) (JAD) |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) |  |
|  | ) |  |
| VOLVO CAR CORPORATION and | ) |  |
| VOLVO CARS OF NORTH AMERICA, | ) | *DOCUMENT SUBMITTED* |
| LLC | ) | *ELECTRONICALLY* |
|  | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**DISCOVERY CONFIDENTIALITY ORDER UNDERTAKING**

I,_____, being duly sworn, state that:

1.      My address is

_____.

2.      My present employer is _____and the address of my present

employment is _____.

3.      My present occupation or job description is _____. A copy

of my current C.V. is attached.

4.      I have carefully read and understood the Parties' Agreed Discovery Confidentiality Order

("Discovery Confidentiality Order") in the above-captioned action (the "Action"), am familiar

with the terms thereof, will comply with all provisions of the Discovery Confidentiality Order,

and agree to be bound by the terms of the Discovery Confidentiality Order in this case.

5.      I will hold in confidence and not disclose to anyone not qualified under the

Discovery Confidentiality Order any Confidential Material, or any words, notes, summaries, abstracts, or indices of Confidential Information disclosed to me.

6.    I will limit use of Confidential Material disclosed to me solely for purpose of this case.

7.    I understand that I am to retain all copies of the materials that I receive which have been designated as containing or reflecting Confidential Material in a container, cabinet, drawer, room or other safe place in a manner consistent with the Discovery Confidentiality Order.  I understand that all copies of any such materials are to remain in my custody until the conclusion of this Action or the completion of my assigned duties, whereupon the copies are to be destroyed, returned to the producing party, or returned to the counsel for the party for whom I was employed or retained for that party's return of Confidential Material to the producing party or destruction of the same.

8.    Such return or destruction shall not relieve me from the obligations imposed upon me by said Discovery Confidentiality Order.  I further agree to notify any support personnel (such as paralegals, administrative assistants, secretaries, clerical and administrative staff), who are necessary to assist me of, the terms of the Discovery Confidentiality Order, and of their obligation not to reveal any Confidential Material to anyone not authorized to receive such information pursuant to the terms of the Discovery Confidentiality Order.

**-Add. 16-**

9.      I understand that I shall be subject to the jurisdiction of the U.S. District Court for the

District of New Jersey in any proceeding relating to my performance under, compliance with, or

violation of the Discovery Confidentiality Order.


I declare under penalty of perjury that the foregoing is true and correct.


Executed this _____ day of _____ 20____ at _____

in the State of _____

                                              By: _____

                                                      (Signature)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUGUS IP, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>VOLVO CAR CORP., and VOLVO CARS<br>OF NORTH AMERICA, LLC,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 12-2906<br>(JEI/JS)<br><br>**CLAIM CONSTRUCTION OPINION** |

**APPEARANCES:**

TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP
By:  William H. Trousdale, Esq.
     Brian M. English, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
     Counsel for Plaintiff

*Pro hac vice:*
THE FUISZ-KUNDU GROUP LLP
By:  John R. Fuisz, Esq.
     Sudip Kundu, Esq.
1455 Pennsylvania Avenue, Northwest
Suite 400
Washington, District of Columbia 20004
     Counsel for Plaintiff

SAIBER LLC
By:  Arnold B. Calmann, Esq.
     Jakob Halpern, Esq.
One Gateway Center
10th Floor
Newark, New Jersey 07102
     Counsel for Defendants

*Pro hac vice:*
LATHAM & WATKINS LLP
By:  Matthew J. Moore, Esq.
     Jonathan D. Link, Esq.
555 Eleventh Street, Northwest
Suite 1000
Washington, District of Columbia 20004
     Counsel for Defendants


**IRENAS**, Senior District Judge:

This is a patent infringement case concerning allegations of both direct and indirect infringement.  Plaintiff Lugus IP, LLC alleges that Defendants Volvo Car Corporation and Volvo Cars of North America, LLC have infringed U.S. Patent No. 5,806,926 (the "'926 patent").  Presently before the Court is the parties' request for claim construction.  The Court held a *Markman* hearing on May 1, 2014, and now construes the disputed claim terms as set forth below.


                              **I.**

The patent at issue in the pending matter, titled "Convertible Vehicle Child Safety Seat," concerns a child restraint system for use in motor vehicles.  Inventor David A. Parsons of Jefferson, Maryland filed the '926 patent on July 18, 1997, and the patent was issued on September 15, 1998.  By recorded assignment, Plaintiff Lugus IP, LLC now holds the entire right, title, and interest in and to the '926 patent.

The '926 patent is for a child safety seat that automatically converts to a seat for adult use when not in use by a child.  Thus, the seat has two settings – the adult / "undeployed" setting, and the child / "deployed" setting – as well as two stages by which it converts between the two settings – a manual conversion from undeployed to deployed, and an automatic conversion from deployed to undeployed.

The '926 patent seeks to address a problem in passenger vehicles: many vehicles, particularly those used for public transportation, lack restraints to hold the passenger in their seat if the vehicle is subject to sudden movements caused by emergency stops or movements to avoid accidents.  This problem is less urgent with adults, who are generally capable of holding onto their seat or a nearby structure in order to avoid being thrown from their seat.  However, children generally lack the strength necessary to protect themselves and therefore face substantial risks in passenger vehicles that lack child safety restraints.

In view of these safety issues, the '926 patent further recognizes that installing specific child and adult seats in public transportation would be undesirable.  More specifically, public transportation requires seats to be readily available for use by both adults and children, and the installation of specific child safety restraint seats would reduce the available

-Add. 20-

seats for adult passengers.  However, the convertible vehicle child safety seat in the '926 patent is "specially suited" to public transportation applications, where it can transform quickly and easily from its adult configuration to a child configuration, thereby providing restraints and protection for children without reducing the number of available adult seats when unoccupied by a child.

When installed in a passenger vehicle, the '926 seat appears as any normal adult seat.  In its undeployed setting, the '926 seat is fit for an adult's normal usage.  Illustrated in Figure 1 of the '926 patent, the undeployed setting is denoted by the number **14**.

To convert from the adult setting to the deployed child setting, the undeployed seatback pivots down when an individual "manually pull[s] forward and downward" on that seatback.  This pivoting process reveals a Y-shaped safety harness with two belts, shaped to fit over a child's shoulders, in the seatback of the deployed setting.  The safety harness connects through a slot in a fastener between the child's legs.

When the safety harness is engaged, the lower portion of the safety belt is held in position by the projecting end of a spring loaded plunger found underneath the seat.  A T-shaped handle appears on the front end of the seat; when the T-shaped

handle is pulled outward, the spring loaded plunger is further compressed, releasing the safety belt.

In addition, the underneath of the seat is fitted with a contracting piston. When the T-shaped handle is pulled outward to release the safety harness, the child may be removed from the deployed seat. After removing the child, an act that releases the downward pressure on the seat, the piston is permitted to activate and automatically return the deployed seat bottom to its undeployed position as a seatback.

By recorded assignment, Plaintiff Lugus IP, LLC ("Plaintiff" or "Lugus") now holds all rights to enforce the '926 patent. Lugus brings this lawsuit against Defendants Volvo Car Corporation and Volvo Cars of North America, LLC ("Defendants" or "Volvo"), asserting that child safety booster seats installed in certain models of Volvo vehicles, including the Volvo XC60, XC70, and V70,[1] infringe upon the '926 patent.

The final step of converting the deployed seat to its undeployed position is at the root of the parties' infringement dispute. The parties have identified one independent claim and four dependent claim terms that now require construction: (1) "retracting means for automatically retracting said child safety seat into a portion of said adult seat," (2) "to form part of a

[1] Lugus specifically contends that seats in the XC60 and XC70 from model years 2008, 2009, 2011, 2012, and 2013 are infringing products, as well as seats found in the V70, model years 2009 and 2010.

fully contoured adult seat when said child is not located in said child safety seat,"[2] (3) "extension means for permitting the child safety seat to be extended to be used by a child," (4) "latch means associated with said safety straps for securing a child in said child safety seat," and (5) "releasing means." The Court construes these claims below.

## II.

Claim construction is a matter of law for the Court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

The Court begins a claim construction analysis by examining the intrinsic evidence, which includes the claims, the specification, and the prosecution history.[3] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "A

---

[2] The Court notes that Volvo considers terms (1) and (2) to be one term requiring construction in its entirety, rather than as separate claim terms for construction as Lugus contends. The Court addresses this dispute *infra* when construing the language of these claims.

[3] The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips,* 415 F.3d at 1317.

claim construction analysis must begin and remain centered on the claim language itself." *Innova*, 381 F.3d at 1116. There is a heavy presumption that a claim term conveys its ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. But a patentee may overcome this presumption and choose "to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 990 (Fed. Cir. 1999); *see also Schering Corp. v. Amgen Inc.,* 222 F.3d 1347, 1353 (Fed. Cir. 2000); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996).

The claims themselves and the context in which a term is used within the claims can "provide substantial guidance as to the meaning of particular claim terms." *Phillips,* 415 F.3d at 1314. In addition, other claims of the patent may be useful in construing a claim term, as "claim terms are normally used consistently throughout the patent." *Id.* Similarly, claims that differ from each other may provide insight into how a term should be read. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991).

After examining the claims, "it is always necessary to review the specification to determine whether the inventor has

used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582. "For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Markman*, 52 F.3d at 979. For this reason, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

Finally, the Court should also examine the prosecution history, if it is in evidence. *Phillips*, 415 F.3d at 1317. "The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"[I]deally there should be no 'ambiguity' in claim language to one of ordinary skill in the art that would require resort to evidence outside the specification and prosecution history." *Markman*, 52 F.3d at 986. But if the term remains unclear or unambiguous after examining the intrinsic evidence, the Court may turn to extrinsic evidence. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995). "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor

testimony, dictionaries, and learned treatises." *Markman*, 52
F.3d at 980. Although extrinsic evidence is useful in
determining how a person of ordinary skill in the art would
understand the term, it is less reliable for the purposes of
claim construction than the patent and its prosecution history.
*Phillips*, 415 F.3d at 1318-19. Therefore, extrinsic evidence
must be viewed within the context of intrinsic evidence. *Id*. at
1319.

### III.

In the course of briefing, Lugus identifies the following
five claim terms in the '926 patent that require construction:
(1) "retracting means for automatically retracting said child
safety seat into a portion of said adult seat," (2) "to form
part of a fully contoured adult seat when said child is not
located in said child safety seat," (3) "extension means for
permitting the child safety seat to be extended to be used by a
child," (4) "latch means associated with said safety straps for
securing a child in said child safety seat," and (5) "releasing
means." Volvo identifies the same claim terms requiring
construction, however Volvo contends that (1) and (2) should be
read together as one claim requiring construction.

Following briefing and the *Markman* hearing, the parties
refined their disputed claim terms. First, the parties now

agree that the disputed claim terms all fall within the means-plus-function limitation governed by 35 U.S.C. § 112(f). Second, Lugus accepts Volvo's proposed construction of "releasing means."

Before turning to the task of construing the disputed terms, the Court first reviews the means-plus-function limitation. The Court then turns to construing each of the disputed claim terms in accordance with § 112(f).

## A. "Means-Plus-Function" Limitation

A claim element may appear in a patent in a "means-plus-function" format, as envisioned by § 112(f). The statute provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

§ 112(f). In other words, patent language pursuant to § 112(f) may "recite[] a function to be performed rather than definite structure or materials for performing that function." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *see also Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1379 (Fed. Cir. 2013).

Use of the term "means" in the claim language creates a presumption that the term is "drafted in the means-plus-function format" of § 112(f).[4]  *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1340 (Fed. Cir. 2011) (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008)).

The Federal Circuit has established a two-part test for construction of a means-plus-function limitation.  *See*, *e.g.*, *LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*, Nos. 10-cv-4615, 10-cv-6699 (FLW), 2014 WL 183823, at *7-8 (D.N.J. Jan. 16, 2014) (applying Federal Circuit test).  "First, the court must determine the claimed function."  *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) (citation omitted). In this first step, the Court may not "adopt [] a function different from that explicitly recited in the claim nor incorporat[e] . . . structure from the written description beyond that necessary to perform the claimed function."  *LMT Mercer Grp.*, 2014 WL 183823, at *8 (alterations in original) (quoting *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1257-58 (Fed. Cir. 1999)).  Rather, the Court "must construe the function of a means-plus-function limitation to include the limitations contained in the claim language."

---

[4] This presumption may be overcome if the claim "recites sufficient structure for performing the described functions in their entirety."  *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008).

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002).

"Second, the court must identify the corresponding structure in the written description of the patent that performs the function." *Noah Sys., Inc.*, 675 F.3d at 1311 (citation omitted). The structure disclosed in the patent specification is "'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1208 (Fed. Cir. 2002) (quoting *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)); *see also Noah Sys., Inc.*, 675 F.3d at 1311. In essence, this second step requires the Court to identify "an adequate disclosure showing what is meant by [the functional] language." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A. Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). This disclosed structure "must include all structure that actually performs the recited function." *Id.* (citing *Cardiac Pacemakers*, 296 F.3d at 1119).

With these principles under consideration, the Court now turns to the disputed claim terms for construction.

**B. "Retracting means for automatically retracting said child safety seat into a portion of said adult seat" & "to form part**

of a fully contoured adult seat when said child is not located in said child safety seat"

Central to the parties' dispute is whether these two phrases constitute one or two terms requiring construction as the functional portion of the means-plus-function language. Lugus contends that these are two separate terms – the first portion should be construed as the means-plus-function language and the second is additional language also requiring claim construction. On the other hand, Volvo asserts that Lugus's second term is a limitation on the functional portion of the means-plus-function language, and thus the two phrases must be construed together as one. *See Cardiac Pacemakers*, 296 F.3d at 1113. The Court first addresses this dispute before turning to the construction of the terms.

### 1.

Despite Lugus's contention to the contrary, the Court finds that the functional portion of the term requiring claim construction is the following: "Retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat." The Court reaches this conclusion so as to give effect to all of the language in the claim. *See Frans Nooren Afdichtingssystemen*

*B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 722 (Fed. Cir. 2014)
("It is the usual (though not invariable) rule that, in patent
claims as elsewhere, the construction of a clause as a whole
requires construction of the parts, with meaning to be given to
each part so as to avoid rendering any part superfluous.")  The
Court reads the claims at issue "in accordance with the precepts
of English grammar."  *See In re Hyatt*, 708 F.2d 712, 714 (Fed.
Cir. 1983).  To give effect to all parts of the claim, the Court
must consider limitations included in means-plus-function claim
language as part of the claim language.  *Cardiac Pacemakers*, 296
F.3d at 1113.

Here, Volvo properly asserts that intrinsic evidence
demonstrates that the means-plus-function term includes the full
limitation contained in the prepositional phrase: "to form part
of a fully contoured adult seat when said child is not located
in said child safety seat."  The language within the '926 patent
demonstrates that the function – the conversion of the child
seat for adult use when not occupied by a child – appears as a
single functional concept throughout the patent.  For example,
the summary of the invention explains:

> It is an object of the invention to provide
> a convertible vehicle child safety seat that
> automatically converts to a seat for adult
> use when it is not occupied by a child
> through retraction of the child seat portion
> into the back portion of the main seat that
> is accomplished by a piston assembly with a

> piston that decompresses or retracts when
> the child is removed from the seat.

'926 Patent col.2 l.15-22. The detailed description of the
invention similarly describes these functional concepts together
when it explains that once an adult wishes to release the child
from the seat, after pulling the T-shaped handle to release the
child restraints, "the child [may be] removed from the seat back
portion **18** and in view of the previously described contracting
piston **56**, the seat assumes the position illustrated in FIG. 1
for the seat **14** to allow normal seating of an adult passenger."
*Id.* col.4 l.20-27. Finally, there is no grammatical rationale
for separating these two phrases, particularly in light of the
intrinsic evidence describing these related functional concepts.

In its Claim Construction Brief, Lugus argues that no child
must be present for the operation of the seat, and as a result,
inclusion of the "to form part of a fully contoured adult seat
when said child is not located in said child safety seat," reads
the presence of a child into the patent specification. (See
Pl.'s Claim Const. Br. at 12) In support of their position,
Lugus contends that a "claim interpretation that excludes a
preferred embodiment from the scope of the claim is rarely, if
ever, correct." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474
F.3d 1323, 1333 (Fed. Cir. 2007) (quoting *On-Line Techs., Inc.
v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed.

Cir. 2004)). However, in *MBO Laboratories*, the Federal Circuit clearly discerned a conflict between the construed term at issue in that case and the figures included in the patents in that case.[5] *MBO Labs.*, 474 F.3d at 1333. Here, the absence of a picture of a child in the figures included with the patent does not create a similar conflict; Figure 3 manifests the downward pressure of a child (denoted by the letter P) and demonstrates that the prepositional phrase concerning the child's presence (an embodiment of that pressure) is not inconsistent with the embodiment of the child seat shown in the patent.[6] *See* '926 Patent fig. 3. Thus, adopting the entire phrase as the means-plus-function term is consistent with the patent language. As a result, the Court finds that the functional language is: "automatically retracting said child safety seat into a portion

---

[5] In *MBO Laboratories*, the Court was able to discern two different preferred embodiments in two different figures of two patents at issue. *See MBO Labs.*, 474 F.3d at 1333. More specifically, the term "adjacent" was construed by the district court as "contiguous or connected," but upon review, the Federal Circuit looked to two figures in the patents at issue that "clearly show the blocking flange resting somewhat in front of the front surface and not in any way 'contiguous or connected' with it." *Id.* As a result, the district court's claim interpretation excluded a preferred embodiment from the scope of the claim. *Id.* As described *supra*, the Court's construction of this function is in accordance with the claimed language and figures within the '926 patent, avoiding the conflict described in *MBO Laboratories*.

[6] Differently stated, Lugus argues that "[w]hether or not a child is present is not dispositive of whether the seat wants to retract. What is dispositive is whether the T-shaped handle 52 is, or is not, pulled." (Pl.'s Claim Const. Br. at 12-13) This overlooks the downward force of the child included in Figure 3 – an adult user might pull the T-shaped handle and the seat might then try to retract, but until the child (and the child's downward pressure) is removed from the seat, the seat *cannot* retract, as reflected in the language of the limitation.

-Add. 33-

of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat."

### 2.

By resolving the dispute regarding the inclusion of the limitation in the means-plus-function language in accordance with *Cardiac Pacemakers*, the Court has identified the functional language of the means-plus-function term requiring claim construction. The parties' briefing raises three terms within the functional language potentially requiring claim construction: (1) automatically, (2) into a portion of said adult seat to form part of a fully contoured adult seat, and (3) when. The Court addresses each of these in turn.

### a.

In highlighting the term "automatically," the parties initially agree that the term does not require construction, but also enclose a proposed definition depending on whether the Court adopts functional language that requires construction.[7] The Court has already adopted the following functional language:

---

[7] The parties focus their briefing of the term "automatically" on matters of Volvo's alleged infringement. The Court focuses solely on whether the term requires construction, and in doing so, need not parse the parties' briefing concerning infringement. In addition, the Court reaches its conclusion herein disregarding Volvo's video demonstration at oral argument, and therefore does not address whether such video should have been included in any pre-*Markman* discovery by the parties.

"retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat."  In adopting this language, the Court will construe the term "automatically" to give the term its plain meaning, as directed by the Federal Circuit.

The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed."  *Markman*, 52 F.3d at 976.  There is a heavy presumption that a claim term conveys its ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1313.  A court should only look to extrinsic evidence if a term at issue remains unclear or ambiguous after examining the intrinsic evidence.  *Pall Corp.*, 66 F.3d at 1216.

Here, there is no indication that the Court must look past the ordinary and customary meaning of "automatically," as used in the claim language.  In view of the function adopted for the broader term – "retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat" – there is no indication that the term "automatically" should mean anything besides its

commonly understood definition. Throughout the '926 patent, the specification repeatedly describes automatic conversion. For example, the summary of the invention clearly describes how the adult seat automatically converts from the child safety seat into a seat for adult use when not occupied by a child. *See*, *e.g.*, '926 Patent col.1, l.65-67; *Id.* col.2, l.1-22. This automatic conversion is in contrast to various manual tasks, like the manual pulling of pivoting back portion **18** to bring the adult seat back down into position for the child safety seat. *Id.* col.4, l.4-10. In short, there is no indication that the patent gives the term "automatically" any other meaning, nor is there any ambiguity as to its meaning. As the parties consented in their briefing and at oral argument, the term is generally understood as some kind of "self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation."[8] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 148 (1993). As a result, the Court adopts the plain meaning of the term, in accordance with the dictionary definition.

---

[8] The Federal Circuit previously looked to relevant dictionary definitions to clarify how the term "automatically" would be generally understood. *See Space Systems/Loral, Inc. v. Lockheed Martin Corp.*, Nos. 99-1255, 99-1289, 2000 WL 1025154, at *4-5 (Fed. Cir. Aug. 23, 2000). Here, the parties consent that if the Court were to construe "automatically," it should adopt the dictionary definition: "having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 148 (1993). Given that the term is unambiguous in its usage throughout the '926 patent, the Court looks to the dictionary definition only to demonstrate that the general understanding of the term is consistent with the "self-acting or self-regulating mechanism" that the parties consent to in their briefing.

**b.**

Following briefing and oral argument, the parties' central dispute concerning this term, "into a portion of said adult seat to form part of a fully contoured adult seat," concerns the impact of this limitation on the identified function in the § 112(f) means-plus-function term.  However, the Court already addressed this dispute *supra*, determining that this limitation language is a limitation included as part of the function in this means-plus-function term.  Indeed, Lugus concedes that it does not dispute Volvo's proposed plain language interpretation of "portion" or "part of," as Lugus explains that "Lugus is of the position that 'portion' means portion."  (Pl.'s Resp. Claim Const. Br. at 7)  Any dispute between the parties concerning the construction of this term actually concerns whether this limitation should be included in the functional language of the means-plus-function term.  Having concluded that the term must be included, and in light of the parties' agreement that plain meaning of these terms is appropriate, the Court need not further address construction of the term.

**c.**

Finally, the parties dispute the proper construction of the term "when," as part of the limitation: "to form part of a fully contoured adult seat *when* said child is not located in said

child safety seat." '926 Patent, col.4, l.41-42 (emphasis added).  When a term "has more than one 'ordinary' meaning or when reliance on a term's 'ordinary meaning' does not resolve the parties' dispute," the Court must more fully construe the term at issue.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

Here, Volvo asserts that the term "when" should be given its plain meaning, consistent with the term's use in the specification, construed as "just after the moment that," and "in the event that."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2602 (1993).  Lugus also asserts that the term should be given its plain meaning, but contends that this plain meaning is defined as "at or on which," in light of the fact that the presence of a child is irrelevant to the seat's operation.  As a result, failure to construe this term would not resolve Lugus and Volvo's dispute over its construction.

The Court first looks to intrinsic evidence to determine the proper construction of the term "when."  The claim language in the '926 patent explains that the retracting means function includes "automatically retracting said child safety seat . . . when said child is not located in said child safety seat."  '926 Patent col.4, l. 39-42.  As Volvo points out, the summary of the invention describes this automatic process, explaining:

> It is an object of the invention to provide
> a convertible vehicle child safety seat that
> automatically converts to a seat for adult
> use when it is not occupied by a child
> through retraction of the child seat portion
> into the back portion of the main seat that
> is accomplished by a piston assembly with a
> piston that decompresses or retracts when
> the child is removed from the seat.

*Id.* col.2, l.15-21.  Furthermore, the patent specification

explains that the seat "pivot[s] into its upward position as

illustrated for the seat **14** when the handle **52** is pulled outward

*and* the child is removed from the seat back portion **18**."  *Id.*

col.3, l.27-30 (emphasis added).  Importantly, removing the

child causes this retraction because "[t]he weight of the child

(indicated by the letter P [best shown in Figure 3]) holds the

pivoting back portion **18** in its downward position as indicated

in FIG. 1 for the seat **12**."  *Id.* col.4, l.10-12.  In this

context, Volvo argues that its proposed dictionary definition of

"in the event that" properly reflects the fact that automatic

retraction actually occurs at the time that the child is not

located in the seat; otherwise stated as: "[In the event that]

said child is not located in said child safety seat."

In view of this intrinsic evidence, the Court must reject

Lugus's alternate proposed construction.  In Lugus's view, the

presence of the child is irrelevant to the operation of the

automatic retraction, and thus Volvo's proposed temporal

construction of "when" is misplaced.  However, Lugus overlooks

the role of the pressure of the child that appears throughout
the '926 patent, described above.  In essence, though the piston
assembly may "want" to automatically retract, it may only
automatically retract at the time that the pressure from the
child is removed.  As a result, the Court will adopt Volvo's
proposed construction because it comports with the description
contained in the '926 patent.  Thus, the term "when" will be
construed as "in the event that," consistent with the intrinsic
evidence contained in the specification.


### 3.

Finally, in accordance with § 112(f), the Court must
determine the corresponding structure in this means-plus-
function term.  *Noah Sys., Inc.*, 675 F.3d at 1311.  The Court
must only identify structure in the specification or prosecution
history that is clearly linked to the claimed function.  *Texas
Digital Sys.*, 308 F.3d at 1208.

Here, the full function including all of the relevant
limitation terms is: "automatically retracting said child safety
seat into a portion of said adult seat to form part of a fully
contoured adult seat when said child is not located in said
child safety seat."  Volvo proposes the following corresponding
structure, broken into five portions: (1) contracting piston **56**,
including the forward portion **58**, rear portion **60**, and piston

rod **62**; (2) pivoting back portion **18**, including rear portion **64**, bushing **84**, bolt **86**, downward projection **88**, bushing **90**, and bolt **92**; (3) seat frame **94**; (4) bushing **96**; and (5) bolt **98**, such that the bottom surface of the pivoting back portion **18** forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion **18** can form a seat portion of a child safety seat.  In contrast, Lugus only identifies contrasting piston **56**, connected to the seat to cause the seat to pivot in a direction of retraction after being released by handle **52**, spring **50**, and fastener **40**.

To properly define the relevant structure that effects retraction, the Court must adopt Volvo's proposed structure. Lugus essentially contends that pulling T-shaped handle **52** disengages fastener **40**, which permits the force from the contracting piston **56** to bias the child safety seat into the adult seat.  *See* '926 Patent col.4, l.21-28.  However, this overlooks the specification, which details how contracting piston **56** contracts the piston rod **62** when pressure is not applied to seat back portion **18**.  *Id.* col.3, l.59-60.  The contraction of the piston rod **62** pulls the rear portion **64** of the pivoting seatback portion **18** into an upright position.  *Id.* col.3, l. 61-65.  As Volvo points out, Figure 3 shows that the downward projection **88** of the pivoting seatback portion **18** contracts the contracting piston **56** to the point that seatback

-Add. 41-

portion **18** may pivot back "into a portion of said adult seat to form part of a fully contoured adult seat," as required by the claim. *Id.* col.4, l.40-42. Figure 3 also demonstrates how bushings **84** and **90**, and bolts **86** and 92 hold the contracting piston in place (thereby permitting the retraction to occur), and bushing **96** and bolt **98** pivotally connect the seat back portion to the frame to aid the retraction. *Id.* fig. 3. In short, the specification directly corresponds with this structural definition in order to accomplish the claimed function.[9]

Summary

| Term | Function | Structure |
|------|----------|-----------|
| "retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat." | "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat." | Contracting piston **56**, including the forward portion **58**, rear portion **60**, and piston rod **62**; pivoting back portion **18**, including rear portion **64**, bushing **84**, bolt **86**, downward projection |

---

[9] Lugus's proposed structure includes contracting piston **52** like Volvo, but Lugus contends that the contracting piston is activated after being released by handle **52**, spring **50**, and fastener **40**. Adopting this proposed construction overlooks the actual function of the retracting means. As described at oral argument, the following hypothetical demonstrates the inadequacy of this proposed structure: Picture an adult user biasing seatback **18** into the child seat position, but without placing the child in the seat, elected to not use the child seat setting. As a result, the adult user would not have engaged fastener **40**, and spring **50**. Upon removing the pressure of the adult user's hand, the seat would pivot back into a portion of said adult seat, without the adult user ever engaging T-shaped handle **52**. Given that the Court must only include structure that directly corresponds with the stated function, the inclusion of T-shaped handle **52** would be inapposite in this § 112(f) construction.

| | –"automatically" is construed as having its plain and ordinary meaning | **88**, bushing **90**, and bolt **92**; seat frame **94**; bushing **96**; and bolt **98**, such that the bottom surface of the pivoting back portion **18** forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion **18** can form a seat portion of a child safety seat. |
| | –"when" is construed as "in the event that" | |

## C. "Extension means for permitting the child safety seat to be extended to be used by a child."

The parties agree that this term, a portion of the first dependent claim, is also subject to the means-plus-function structure of § 112(f), and the Court agrees. *See Rembrandt Data Techs.*, 641 F.3d at 1340-41 (applying presumption that claim limitation containing the word "means" and reciting function is drafted in accordance with § 112(f)). In their briefing, Lugus and Volvo propose the same functional language, but identify disparate structures in their proposed constructions of this means-plus-function term.[10] The Court reviews the proposed function before determining the corresponding structure.

[10] The Court acknowledges that Lugus's Claim Construction Brief initially contained proposed functional language with reference to seat belts. As Lugus highlighted in their responsive brief, reference to seat belts in the proposed functional language was in error, and the Court disregards any dispute regarding the functional language related to Lugus's original inclusion of the seat belt language.

-Add. 43-

The Court will adopt the parties' proposed function: "for permitting the child safety seat to be extended to be used by a child." This construction follows directly from the claim language, which reads in full: "extension means for permitting the child safety seat to be extended to be used by a child." '926 patent col.4, l.46-48. Because the function is explicitly recited in the claim language, the Court will adopt the parties' proposed language. *See Micro Chem.*, 194 F.3d at 1258 ("The statute [§ 112(f)] does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim.").

Volvo and Lugus directly dispute the corresponding structure of this function. Volvo's proposed structure includes the pivoting back portion **18**, seat frame **94**, bushing **96**, and bolt **98**. In Volvo's view, these structures are necessary for extending the child seat from its undeployed position (as an adult seat) to its deployed position for child use. Volvo contends that the '926 patent explains that this extension process is a manual operation; specifically, "[t]he seat **12** or **14** has a pivoting back portion **18** that, as illustrated for the seat **12**, can be manually pulled forward and downward . . . ." '926 Patent col.2, l.60-63. In other words, the extension process requires the back portion **18** because this structure is the actual extension referred to by the '926 patent. In

**-Add. 44-**

Case 1:12-cv-... Case 1:12-cv-11743 Document 102 Filed 05/95/14 Filed 02/21/2014 PageID: 1207

addition, seat frame **94** is "pivotally connected" to the seat back portion **18**, permitting it to undertake the extension described in the function. *Id.* col.2, l.57-59. Finally, bushing **96** and bolt **98** are necessary structures because, as the '926 patent explains, "[t]he seat back portion **18** is pivotally connected to the seat frame **94** through a bushing **96** and an associated bolt **98**." *Id.*

Lugus proposes an entirely different structure corresponding to the functional language. Lugus asserts that the necessary structure to accomplish the extension means includes just slot **38**, and lower end portions **34** and **36** that allow the child safety seat to be used by the child. Lugus asserts this position is borne out in the '926 patent, which explains: "As also illustrated in FIG. 1, the lower end portions **34** and **36** of the belts **24** and **26** slide through a slot **38** if a fastener **40**. This fastener **40** fits into a slot **42** in the seat back portion **18** when the seat back portion is in its downward rotational position." *Id.* col.2, l.9-11. In other words, Lugus's corresponding structure focuses on the extension of the safety belts. Lugus maintains that Volvo's structure, if adopted, would be repetitive of the corresponding structure in independent Claim 1, and that the dependent claim focuses instead on the extension of the safety belt.

**-Add. 45-**

Here, the Court finds that Volvo's proposed structure, though covering some of the same structural elements identified in claim 1, directly corresponds with the functional language identified by the parties. Dependent claim 2 explicitly states that "said child safety seat also has extension means for permitting the child safety seat to be extended to be used by a child." *Id.* col.4, l.45-47. However, the structure that accomplishes this extension is not related to the seat *belt* - rather, the structure must be related to the child safety *seat*, given the claim language quoted above. *See Texas Digital Sys., Inc.*, 308 F.3d at 1208 (quoting *Braun*, 124 F.3d at 1424) ("Structure disclosed in the specification is 'corresponding' structure only if the specification . . . clearly links or associates that structure to the function recited in the claim."). The structures that correspond to the child safety seat, and its extension so as to be extended for use by a child, are the pivoting back portion **18**, seat frame **94**, bushing **96**, and bolt **98**. The Court therefore adopts Volvo's proposed structure.

<u>Summary</u>

| Term | Function | Structure |
|---|---|---|
| "extension means for permitting the child safety seat to be extended to be used by a child." | "for permitting the child safety seat to be extended to be used by a child." | Pivoting back portion **18**, seat frame **94**, bushing **96**, and bolt **98**. |

**D. "Latch means associated with said safety straps for securing a child in said child safety seat."**

The parties agree that this term, a portion of a dependent claim, is also subject to the means-plus-function structure of § 112(f), and the Court agrees. *See Rembrandt Data Techs.*, 641 F.3d at 1340-41. Following briefing and oral argument, Lugus consents to adoption of Volvo's proposed function for claim construction purposes, leaving just the corresponding structure in dispute. The Court first reviews the agreed-upon function before adjudicating the parties' dispute over its corresponding structure.

The Court adopts Volvo's proposed construction of the function: latching the safety straps for securing a child in said child safety seat. The claim language recites a claim for "latch means associated with said safety straps for securing a child in said safety seat." '926 Patent col.4, l.53-54. The construction of the functional language therefore incorporates the claim language by clarifying this claim language; specifically, the latch means physically latch the safety straps and secure a child in the safety seat, a construction that comports with the quoted claim language above.

In view of this function, the Court turns to identifying the corresponding structure that links to the function recited in the claim. *Texas Digital Sys.*, 308 F.3d at 1208. Lugus

contends that this structure simply includes the fastener marked **40**, most easily identified in Figure 2 of the '926 patent. Lugus further asserts that the operating mechanisms of the spring-loaded plunger **48** and the operating structure visible in Figure 2 are not part of the function of the latch. Lugus points to the Federal Circuit's directive that "[s]tructure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Texas Digital Sys.*, 308 F.3d at 1208 (quoting *Braun*, 124 F.3d at 1424). In addition, a district court "may not import functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function." *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1098 (Fed. Cir. 2008) (quoting *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001)). As a result, Lugus contends that simply the fastener is linked directly to the identified function, and no additional pieces are required to accomplish the latching the safety straps for securing a child in said child safety seat.

Volvo rejects Lugus's contention that the corresponding structure consists of only fastener **40**. In Volvo's view, the fastener alone simply holds two ends of the safety harness together, a point borne out in the '926 patent language. *See*

'926 Patent col.3, l.9–11 ("[T]he lower end portions **34** and **36** of the belts **24** and **26** slide through a slot **38** in fastener **40**.").

Instead, Volvo proposes that the necessary structure for securing a child in said safety seat requires the fastener **40**, as well as the other structures that allow the belt to actually latch so as to accomplish the identified function.  These associated structures include the slot **44** that the fastener is placed into, as well as the spring-loaded plunger **48** and its projecting end portion **46**, in addition to the compressed coil spring **50**, tubular housing **78**, and circular collar **82**. Specifically, Figure 2 demonstrates that fastener **40** and the projecting end **46** are necessary because they create the interlock that latches the child safety belts to the child safety seat.  In addition, the projecting end portion **46** must be included because it causes the spring-loaded plunger **48** to retract and compress the spring coil **50** when the fastener **40** exerts downward pressure on it.  *Id.* col.3, l.41–45.  Once fastener **40** is fully inserted, the compressed spring coil **50** and spring-loaded plunger **48** are necessary because they decompress. *Id.* col.3, l.41–50.  Decompression of these two parts forces the projecting end **46** through slot **44** in the fastener, which is necessary to receive and lock the projecting end portion **46**. *Id.* col.3, l. 45–50.  Tubular housing **78** and circular housing **82**

are also necessary to contain the spring coil **50**, controlling its motion when decompressing to force the end portion **46** into slot **44**. *Id.* col.3, l.46-52.

Here, the Court must adopt Volvo's proposed structure. Though cognizant that the Court may not import functional limitations not included in the claim, adopting Lugus's proposed function would ignore necessary structure included in the '926 patent language that corresponds with the function. To secure a child in said child safety seat, the fastener must actually secure into the child safety seat, which the fastener **40** alone cannot do. Instead, the interlocking structure that Volvo identifies directly corresponds with the functional language concerning securing the child in the child safety seat. Though Lugus rejects that these interlocking portions have any relation to the function of the latch, such a view overlooks the full nature of the identified function, which requires actually securing the child in the seat, a task that cannot be accomplished without locking the latch into place.

Taking the full function into view, such interlocking is essential in order to accomplish actually securing the child in the child safety seat. Thus, the Court adopts Volvo's proposed structure: the fastener **40**, slot **44**, projecting end portion **46**, spring loaded plunger **48**, compressed coil spring **50**, tubular housing **78**, and circular collar **82**.

Summary

| Term | Function | Structure |
|------|----------|-----------|
| "latch means associated with said safety straps for securing a child in said child safety seat." | "latching the safety straps for securing a child in said child safety seat." | Fastener **40**, slot **44**, projecting end portion **46**, spring loaded plunger **48**, compressed coil spring **50**, tubular housing **78**, and circular collar **82** |

## E. "Releasing means"

The parties agree that the term "releasing means," a portion of a dependent claim, is also subject to the means-plus-function structure of § 112(f). As explained at oral argument and in briefing, Lugus consents to Volvo's proposed construction of both the function and structure of releasing means. The Court briefly recounts this function and structure.

As described in Volvo's brief, the term releasing means describes a function of "releasing the latch means." This is an appropriate articulation of the function in light of the '926 patent's language and the claim itself, which explains that "said latching means has associated releasing means." '926 Patent col.4, l.57-58. In other words, the language of the claim describes a function that disengages the latching means.

Though the parties initially contested the precise structure of this function, Lugus consented to Volvo's proposed structure in its responsive brief and again at oral argument.

To accomplish the function of releasing the latch means, the Court finds that both the T-shaped handle **52** and plunger **48** are required structures. As the patent explains, "The plunger **48** has a generally T-shaped handle **52** on its outer end that projects outward from the forward portion **54** of the seat and this permits the fastener **40** to be released when it is pulled manually outward to further compress the coil spring **50**." *Id.* col. 3, l.17-21. The plunger must be compressed in order to compress the coil spring, which is part of the release as described above. As a result, both the T-shaped handle and the plunger are required structures to actually release the latch means and accomplish the function.

<u>Summary</u>

| Term | Function | Structure |
|------|----------|-----------|
| "releasing means" | "releasing the latch means" | T-shaped handle **52**, and plunger **48**. |

**IV.**

For the reasons set forth above, the disputed claim terms will be construed as indicated. The Court provides a brief summary table on the next page for the convenience of the parties. An appropriate Order accompanies this Opinion.

Date: 5-20-14

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

-Add. 52-

| Term | Function | Structure |
|---|---|---|
| "retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat." | "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat."<br><br>–"automatically" is construed as having its plain and ordinary meaning<br><br>–"when" is construed as "in the event that" | Contracting piston **56**, including the forward portion **58**, rear portion **60**, and piston rod **62**; pivoting back portion **18**, including rear portion **64**, bushing **84**, bolt **86**, downward projection **88**, bushing **90**, and bolt **92**; seat frame **94**; bushing **96**; and bolt **98**, such that the bottom surface of the pivoting back portion **18** forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion **18** can form a seat portion of a child safety seat. |
| "extension means for permitting the child safety seat to be extended to be used by a child." | "for permitting the child safety seat to be extended to be used by a child." | Pivoting back portion **18**, seat frame **94**, bushing **96**, and bolt **98**. |
| "latch means associated with said safety straps for securing a child in said child safety seat." | "latching the safety straps for securing a child in said child safety seat." | Fastener **40**, slot **44**, projecting end portion **46**, spring loaded plunger **48**, compressed coil spring **50**, tubular housing **78**, and circular collar **82** |
| "releasing means" | "releasing the latch means" | T-shaped handle **52**, and plunger **48**. |

-Add. 53-

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LUGUS IP, LLC,

       Plaintiff,

   v.

VOLVO CAR CORP., and VOLVO CARS
OF NORTH AMERICA, LLC,

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-2906
      (JEI/JS)

**CLAIM CONSTRUCTION ORDER**

**APPEARANCES:**

TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP
By: William H. Trousdale, Esq.
    Brian M. English, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
    Counsel for Plaintiff

*Pro hac vice:*
THE FUISZ-KUNDU GROUP LLP
By: John R. Fuisz, Esq.
    Sudip Kundu, Esq.
1455 Pennsylvania Avenue, Northwest
Suite 400
Washington, District of Columbia 20004
    Counsel for Plaintiff

SAIBER LLC
By: Arnold B. Calmann, Esq.
    Jakob Halpern, Esq.
One Gateway Center
10th Floor
Newark, New Jersey 07102
    Counsel for Defendants

*Pro hac vice:*
LATHAM & WATKINS LLP
By:  Matthew J. Moore, Esq.
     Jonathan D. Link, Esq.
555 Eleventh Street, Northwest
Suite 1000
Washington, District of Columbia 20004
     Counsel for Defendants

**IRENAS**, Senior District Judge:

This matter having come before the Court upon the parties' request for claim construction; the Court having held a *Markman* hearing on May 1, 2014; the Court having considered the parties' oral and written submissions; and for the reasons set forth in an Opinion issued on an even date herewith; and for good cause appearing;

**IT IS** on this 20th day of May, 2014,

ORDERED THAT:

The disputed claim terms shall be construed as set forth in the accompanying Opinion.  A summary table of these terms appears on the next page.

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

| Term | Function | Structure |
|---|---|---|
| "retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat." | "automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat."<br><br>-"automatically" is construed as having its plain and ordinary meaning<br><br>-"when" is construed as "in the event that" | Contracting piston **56**, including the forward portion **58**, rear portion **60**, and piston rod **62**; pivoting back portion **18**, including rear portion **64**, bushing **84**, bolt **86**, downward projection **88**, bushing **90**, and bolt **92**; seat frame **94**; bushing **96**; and bolt **98**, such that the bottom surface of the pivoting back portion **18** forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion **18** can form a seat portion of a child safety seat. |
| "extension means for permitting the child safety seat to be extended to be used by a child." | "for permitting the child safety seat to be extended to be used by a child." | Pivoting back portion **18**, seat frame **94**, bushing **96**, and bolt **98**. |
| "latch means associated with said safety straps for securing a child in said child safety seat." | "latching the safety straps for securing a child in said child safety seat." | Fastener **40**, slot **44**, projecting end portion **46**, spring loaded plunger **48**, compressed coil spring **50**, tubular housing **78**, and circular collar **82** |
| "releasing means" | "releasing the latch means" | T-shaped handle **52**, and plunger **48**. |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LUGUS IP, LLC,

      Plaintiff,

   v.

VOLVO CAR CORP., and VOLVO CARS
OF NORTH AMERICA, LLC,

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-2906
(JEI/JS)

**OPINION**

**APPEARANCES:**

TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP
By:  William H. Trousdale, Esq.
     Brian M. English, Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
     Counsel for Plaintiff

*Pro hac vice:*
THE FUISZ-KUNDU GROUP LLP
By:  John R. Fuisz, Esq.
     Sudip Kundu, Esq.
1455 Pennsylvania Avenue, Northwest
Suite 400
Washington, District of Columbia 20004
     Counsel for Plaintiff

SAIBER LLC
By:  Arnold B. Calmann, Esq.
     Jakob Halpern, Esq.
One Gateway Center
10th Floor
Newark, New Jersey 07102
     Counsel for Defendants

*Pro hac vice:*
LATHAM & WATKINS LLP
By:  Matthew J. Moore, Esq.
     Jonathan D. Link, Esq.
555 Eleventh Street, Northwest
Suite 1000
Washington, District of Columbia 20004
     Counsel for Defendants


**IRENAS**, Senior District Judge:

     This is a patent infringement case concerning allegations

of both direct and indirect infringement.  Plaintiff Lugus IP,

LLC contends that Defendants Volvo Car Corporation and Volvo

Cars of North America, LLC have infringed U.S. Patent No.

5,806,926 (the "'926 patent").  Presently before the Court are

two motions: Defendants' Motion for Summary Judgment, and

Plaintiff's Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 41(a)(2).[1]  For the reasons set forth below, the Court

will grant Defendants' motion for summary judgment, rendering

Plaintiff's motion moot.


                              **I.**

     The United States Patent Office issued the '926 patent to

inventor David A. Parsons of Jefferson, Maryland, on September

15, 1998.  As detailed in this Court's claim construction

Opinion, the '926 patent is for "a child safety seat that

---

[1] This Court exercises jurisdiction under 28 U.S.C. §§ 1331 & 1338(a).

automatically converts to an adult seat when not in use by a child." *Lugus IP, LLC v. Volvo Car Corp.*, No. 12-cv-2906 (JEI/JS), 2014 WL 2094086, at *1 (D.N.J. May 20, 2014).  By recorded assignment, Plaintiff Lugus IP, LLC ("Plaintiff" or "Lugus") now holds all rights to enforce the '926 patent.  Lugus brings this lawsuit against Defendants Volvo Car Corporation and Volvo Cars of North America, LLC ("Defendants" or "Volvo"), asserting that child safety booster seats installed in certain models of Volvo's vehicles, including the Volvo XC60, XC70, and V70, infringe upon the '926 patent.

The '926 patent describes a seat with an adult / undeployed setting, and a child / deployed setting.  This Court's claim construction Opinion describes this conversion in some detail:

> To convert from the adult setting to the deployed child setting, the undeployed seatback pivots down when an individual "manually pull[s] forward and downward" on that seatback.  This pivoting process reveals a Y-shaped safety harness with two belts, shaped to fit over a child's shoulders, in the seatback of the deployed setting.  The safety harness connects through a slot in a fastener between the child's legs.
> When the safety harness is engaged, the lower portion of the safety belt is held in position by the projecting end of a spring loaded plunger found underneath the seat.  A T-shaped handle appears on the front end of the seat; when the T-shaped handle is pulled outward, the spring loaded plunger is further compressed, releasing the safety belt.
> In addition, the underneath of the seat is fitted with a contracting piston.  When the T-shaped handle is pulled outward to release

3

**-Add. 59-**

> the safety harness, the child may be removed
> from the deployed seat.   After removing the
> child, an act that releases the downward
> pressure on the seat, the piston is permitted
> to activate and automatically return the
> deployed seat bottom to its undeployed
> position as a seatback.

*Id.* at *1-2.

Volvo's allegedly infringing product is styled as an

"integrated two-stage booster seat."[2]   (See, e.g., Isaksson Decl.

Ex. 1 at 49)   In the adult / stowed position, Volvo's booster

seat is equipped for an adult, who may sit normally in the seat

with the standard three-point seatbelt arranged to fall across

their body at the shoulder and waist.   (Isaksson Decl., Ex. 1 at

50 fig. G043982; id., Ex. 2 at 49 fig. G071696; id., Ex. 3 at 47

fig. G017696; id., Ex. 4 at 52 fig. G030708)

To convert into the child / raised position, the user must

pull forward on a handle found at the base of the seat bottom,

then "[p]ress the booster cushion rearward to lock it in

position."   (See, e.g., Isaksson Decl. Ex. 1 at 50)   By pressing

the booster cushion back, the user raises the height of the

booster cushion, thereby permitting a child to sit in the seat

---

[2] The two-stage booster seat is designated as two-stage because it
contains two different child settings.   (See, e.g., Isaksson Decl. Ex. 1 at
49)   The appropriate setting for a child varies by the child's weight and
height, for reasons discussed above.   (Id.)   According to Volvo's
disclosures, Volvo has previously included a one-stage booster seat, with
just one child setting, bearing the same design but just one child setting,
in various models in past years.   (Isaksson Decl. ¶¶ 8-9)   Though Lugus
raises certain evidentiary objections discussed *infra*, the record does not
reflect any dispute regarding differences in the design of Volvo's one-stage
or two-stage booster seats.

4

with the three-point seatbelt crossing their body at the waist and shoulders (rather than improperly across the neck or head). (See, e.g., id. at 49 fig. G043980)  The two-stage booster seat includes a second raised position, permitting the user to adjust the seat to a higher position, thereby allowing a smaller child to sit in the seat with the three-point seatbelt crossing their body at the waist and shoulders.  (Id. at 50)  When raised in the child settings, the booster seat locks into position.  (Id.)

To stow the booster cushion, a user must pull forward on the handle found at the base of the cushion to release the cushion from its locked position, and then press down on the center of the cushion to return it to its stowed position.  (Id. at 51)  According to the undisputed record, stowing Volvo's booster seat into the adult stowed position requires simply pulling the handle at the base of the cushion and pressing firmly on the cushion until it locks into the stowed setting. (Id.)

Lugus's Complaint alleging infringement of the '926 patent was originally filed in the United States District Court for the Eastern District of Virginia.  Following litigation in that court, proceedings against certain Defendants were stayed pending the transfer of the case to this Court, where the parties litigated claims of direct and indirect infringement against Volvo.  After identifying claims in the '926 patent that

5

required construction, the parties requested and were granted a
claim construction hearing on May 1, 2014.  After the hearing,
but before issuance of this Court's claim construction Opinion
and Order, Volvo filed the currently pending motion for summary
judgment on May 9.  The Court issued its claim construction
Opinion and Order on May 20, and Lugus filed the currently
pending motion to dismiss on May 30.  Volvo filed its opposition
to Lugus's motion to dismiss on June 5, and the Court held a
status conference on June 10.  Following the status conference,
the parties finished briefing Volvo's motion for summary
judgment in accordance with the Scheduling Order and the Court
held oral argument on the motion for summary judgment on July
22.  The Court now reviews the basis for granting summary
judgment and denying the motion to dismiss.

## II.

Summary judgment is properly applied in patent cases, "as
in other areas of litigation." *Tokai Corp. v. Easton Enters.,
Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011) (quoting *Cont'l Can
Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed Cir.
1991)).  "The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999); *Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed Cir. 2001). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252 (1986). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson*, 477 U.S. at 249.

### III.

As a preliminary matter, the Court denies Lugus's varied objections concerning discovery. Lugus ostensibly seeks relief under Federal Rule of Civil Procedure 56(d), which provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

7

> opposition, the court may: (1) defer
> considering the motion or deny it; (2) allow
> time to obtain affidavits or declarations or
> take discovery; or (3) issue any other
> appropriate order.

Courts within the Third Circuit require parties seeking further

discovery to submit an affidavit "specifying, for example, what

particular information is sought; how, if uncovered, it would

preclude summary judgment; and why it has not been previously

obtained." *Smith v. Depuy Orthopaedics, Inc.*, 552 F. App'x 192,

195 (3d Cir. Jan. 14, 2014) (quoting *Dowling v. City of Phila.*,

855 F.2d 136, 139-40 (3d Cir. 1988)).

Though Lugus has not submitted a separate formal affidavit

or declaration, Lugus encloses the Fuisz Declaration

accompanying its opposition brief.  Portions of the Fuisz

Declaration explain that, as a nonpracticing entity, Plaintiff

has sought to limit discovery to only the necessary information

for each stage of the case.  (Fuisz Decl. ¶ 10)  In doing so,

Lugus highlights that it has not received information concerning

Volvo's accused product in model year 2014 or 2015 vehicles.

(Id. ¶ 11)  Lugus contends that "[t]here is clearly confusion

between the parties as to how the Volvo seats do or do not

operate that would benefit from discovery," covering the more

recent model years.  (Id. ¶ 15)

However, this assertion does not explain what information

concerning the model year 2014 and 2015 products would preclude

8

summary judgment.  Lugus acknowledges that Volvo has produced
the technical specification for the accused product.  (See Fuisz
Decl. Ex. D, Technical Specification)  Lugus concedes that it
has received production concerning model years 2005 through
2013.  (Fuisz Decl. ¶ 11)  There is no dispute that the "design
and configuration of [Volvo's] one-stage and two-stage
integrated booster seats" is the same in each of the accused
model years, and there is no evidence to suggest that the design
is any different in model years 2014 and 2015.  (See Isaksson
Decl. ¶ 9)  Given that the same booster seat design is at issue,
Lugus has not demonstrated why documents concerning model years
2014 and 2015 preclude summary judgment, and the Court may
therefore properly consider Volvo's motion.[3]

---

[3] Lugus also asserts various challenges concerning the declaration of
Per Isaksson, which must be denied.  Contrary to Lugus's contention that the
Court may not consider Isaksson's declaration, Isaksson was identified in
Volvo's Rule 26(a)(1) initial disclosures, as demonstrated by Lugus's exhibit
E.  (Fuisz Decl. Ex. E at 2)  In addition, Lugus asserts that this Court
improperly permitted Volvo to substitute Isaksson's declaration for the
originally filed declaration of Pia Landby.  In the status conference on June
10, 2014, Volvo indicated that Landby replaced Isaksson at Volvo, though
Isaksson remained with Volvo in a different capacity.  Volvo asserted that
Isaksson, as a result of his previous role with Volvo identified in the Rule
26(a)(1) disclosure, remained competent to authenticate the documents.  To
quickly and efficiently adjudicate the parties' dispute, a goal that Lugus
encouraged in the course of its efforts to take an appeal of this Court's
claim construction Opinion to the Federal Circuit, the Court permitted Volvo
to amend its declaration and replace Landby with Isaksson.  "[M]atters of
docket control and conduct of discovery are committed to the sound discretion
of the district court."  In re Fine Paper Antitrust Litig., 685 F.3d 810, 817
(3d Cir. 1982).  The replacement of this declaration with a party identified
in Volvo's Rule 26(a)(1) disclosures neither offends Rule 37 nor precludes
this Court from reviewing the materials authenticated by Isaksson.

**IV.**

Patent infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). Indirect liability may also be imposed for inducing another to infringe. *Id.* § 271(b). Analysis of a patent infringement claim entails a two-step inquiry — a court must first construe the patent claims, and then determine whether the accused product contains each limitation of the properly construed claims, either literally or under the doctrine of equivalents. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372-74 (1996); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). "To prove an accused product literally infringes the patent in suit, the product must contain each and every limitation of the asserted claim(s)." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014). "If even one limitation is missing in the accused product, there is no literal infringement." *Noven Pharms., Inc. v. Watson Labs., Inc.*, No. 11-cv-5997 (DMC/JBC), 2013 WL 6190182, at *6 (D.N.J. Nov. 26, 2013). Having already completed claim construction, the Court proceeds to inquiry into whether Volvo's product contains each limitation of the asserted claim in the '926 patent.

10

**-Add. 66-**

Lugus's Complaint asserts two claims against Volvo: Count
One alleges direct infringement of the '926 patent, and Count
Two alleges indirect infringement by inducing others to purchase
and use Volvo's booster seat. (Compl. ¶¶ 16, 25-27)  Volvo
seeks summary judgment of non-infringement on both counts,
arguing that Volvo's booster seats do not infringe on the terms
of the patent.  Specifically, Volvo contends that its booster
seats do not automatically retract into a fully contoured adult
seat, its booster seats do not automatically retract when a
child is not located in the seat, and that its booster seats do
not infringe under the doctrine of equivalents.  The Court
addresses these arguments in turn.

**A.**

Claim 1 of the '926 patent claims the following:

> A adult vehicle seat in combination with a
> child safety seat for protecting a child while
> seated in a vehicle comprising an adult seat,
> a child safety seat, said child safety seat
> being part of said adult seat and *having*
> *retracting means for automatically retracting*
> *said child safety seat into a portion of said*
> *adult seat to form part of a fully contoured*
> *adult seat when said child is not located in*
> *said child safety seat.*

'926 Patent col.4 1.36-42 (emphasis added).  A significant
dispute, resolved in this Court's Claim Construction Opinion and
Order, concerned the construction of the terms "automatically,"

11

"into a portion of said adult seat to form part of a fully contoured adult seat," and "when." *See Lugus IP, LLC*, 2014 WL 2094086, at *7-8.[4]  Under the adopted constructions of these claim terms, Volvo's accused product does not automatically retract to form part of a fully contoured adult seat, nor does the accused product retract when a child is removed from the seat.

First, the Court reviews the relevant claim limitations concerning retraction when a child is removed from the '926 seat.  Claim 1 of the '926 Patent, as construed by this Court, limits the claim to automatic retraction "in the event that" the child is removed from the seat.  *Id.* at *8.  This construction incorporates a temporal condition based on the language and context of the '926 patent, explained as such:

> In essence, though the ['926 seat's] piston assembly may "want" to automatically retract, *it may only automatically retract at the time that the pressure from the child is removed.* As a result, the Court will adopt Volvo's proposed construction because it comports with the description contained in the '926 patent.

*Id.* (emphasis added).

---

[4] This Court's claim construction Opinion and Order establish the construction of the disputed claim terms.  *See Cybor*, 138 F.3d at 1454. Lugus contends that Volvo's motion advances a different claim construction and therefore an improper basis for finding non-infringement, but such arguments are irrelevant because the Court considers whether infringement occurred according to the constructions adopted in the claim construction Opinion.

Consistent with this limitation, Lugus concedes that
Volvo's product does not automatically retract only at the
moment that a child is removed from Volvo's seat.  Volvo
demonstrates this distinction between its product and the '926
patent by providing the owner's manuals in Volvo's Exhibits 1-4.
Each exhibit demonstrates that Volvo's booster seat, in its
child configuration, remains locked in the child position in the
event that a child is removed from the seat.  (See Isaksson
Decl. Ex. 1 at 52; Ex. 2 at 50; Ex. 3 at 48; Ex. 4 at 52)  The
retraction process occurs independent of the removal of a
child's downward pressure and only when a user pulls the handle
and pushes down on the seat cushion, unlike the limitation found
in Claim 1 where retraction occurs when (in the event that, or
at the instant that) the child's downward pressure is removed.

Similarly, the Court adopted the plain meaning of
"automatically" and "to form part of a fully contoured adult
seat" when construing the disputed claims in the '926 patent.
*Lugus IP*, 2014 WL 2094086, at *7.  In clarifying these terms,
the Court explained that "automatically" is "generally
understood as some kind of self-acting or self-regulating
mechanism that performs a required act at a predetermined point
in an operation." *Id.* (internal quotation marks omitted).  In
addition, the Court gave effect to the plain meaning of Claim

13

1's language, "into a portion of said adult seat to form part of a fully contoured adult seat." *Id.*

In view of these constructions, there is no dispute that Volvo's accused product, when transitioning from its child to adult settings, requires a manual intervention to lock the Volvo seat into the adult configuration in order to form a portion of the fully contoured adult seat. Unlike Claim 1 of the '926 patent, the seat-bottom segment of Volvo's seat does not transition from its child setting to its adult setting under a self-actuating procedure; rather, a user must manually press the Volvo seat-bottom from the elevated child position into the stowed adult position.[5] (See Isaksson Decl. Ex. 1 at 51; Ex. 2 at 50; Ex. 3 at 48; Ex. 4 at 52) By requiring this manual interaction to reach the adult setting and become a part of the fully contoured adult seat, Volvo's product does not contain the automatic limitation of Claim 1 in the '926 patent, and therefore does not literally infringe the patent's terms.

_____

[5] For example, the Volvo XC60 Owner's Manual explains that first a user pulls a handle to release the booster cushion, and then the user must: "Press down on the center of the booster cushion to return it to the stowed position." (Isaksson Decl. Ex. 1 at 51) In the '926 patent, following the release of the child restraint harness, the seat-bottom pivots upward in a self-actuating process after the child is released from the seat, at which point "[a]s illustrated for the seat **14**, with the seat back portion **18** in its upward position the child safety portion is stored behind the seat back portion **18** and this permits the seat **18** to be used in a normal fashion by an adult passenger." '926 Patent col.3 l.30-34. This is borne out in the claim language and its limitations: "said child safety seat . . . having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat . . . ." *Id.* col.4 l.38-42.

14

**B.**

The doctrine of equivalents "allows the patentee to claim
those insubstantial alterations that were not captured in
drafting the original patent claim but which could be created
through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo
Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002) (*Festo I*).
However, when a patent claim is narrowed during prosecution,
"prosecution history estoppel may limit the application of the
doctrine of equivalents." *O2 Micro Int'l Ltd. v. Beyond
Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1363 (Fed. Cir.
2008). As the Defendants properly highlight, a "narrowing
amendment to a patent claim that adds an additional claim
limitation creates a presumptive surrender of equivalents."
*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d
1131, 1139 (Fed. Cir. 2004).

To overcome this estoppel, a patentee must establish one of
three possible exceptions by a preponderance of the evidence:

> (1) [T]he equivalent would have been
> unforeseeable at the time the narrowing
> amendment was made; (2) the rationale
> underlying the narrowing amendment bore no
> more than a tangential relation to the
> equivalent at issue; or (3) there was some
> other reason suggesting that the patentee
> could not reasonably have been expected to
> have described the alleged equivalent.

*Honeywell Int'l*, 370 F.3d at 1140 (internal quotation marks
omitted) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo*

15

*Kabushinki Co., Ltd.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (*Festo II*)).

Here, the '926 patent's prosecution history demonstrates a limitation of Claim 1. The claim, initially phrased as two dependent claims, was "objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims [that were rejected because they were anticipated as prior art]." (Detailed Action ¶ 7, Jan. 5, 1998) As a result, the patentee rewrote those dependent claims to include "in independent form including all of the limitations of the base claim and any intervening claims," so as to comply with the examiner's commentary and submit a permissible claim.[6] (Response at 3, Mar. 16, 1998) This change

---

[6] Initially, the patentee proposed:
> 1. A vehicle child safety seat for protecting a child while seated in a vehicle wherein said child safety seat is formed as part of an adult seat. 2. The vehicle child safety seat of claim 1 wherein said child safety seat is retractable into a portion of said adult seat. . . . 9. The vehicle child safety seat of claim 2 wherein said child safety seat is automatically retractable when said child is not located in said seat. 10. The vehicle child safety seat of claim 9 wherein, said child safety seat retraction provides a fully contoured adult seat.

(Application at 11) This language, following the addition of the limitation, became:
> 1. An adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle comprising an adult seat, a child safety seat, said child safety seat being part of said adult seat and having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult

16

**-Add. 72-**

limited the '926 patent to covering the automatic retraction
from the seat's child setting to its adult setting. *See* '926
Patent col.4 l.36-42. Lugus has failed to rebut this
presumptive surrender of equivalents, putting forth no evidence
in the record to support one of the relevant exception.
Instead, Lugus contends that Volvo misconstrues the prosecution
history. However, given the limitation added during prosecution
and found in the language of Claim 1 of the '926 patent — that
retraction occur automatically, when the pressure from the child
was removed from the seat — the doctrine of equivalents does not
offer a basis for determining that Volvo's product infringes.


## V.

Following the issuance of the Court's claim construction
Opinion and Order, and before opposing Volvo's motion for
summary judgment, Lugus sought to dismiss this action by filing
a motion to dismiss pursuant to Rule 41(a)(2). Lugus sought
dismissal with prejudice to hasten a speedy appeal of this
Court's claim construction Opinion and Order to the Federal
Circuit, conceding that if this Court's claim constructions were

---

seat when said child is not located in said child safety
seat.
'926 Patent col.4 l.36-42. In other words, the prosecution history
demonstrates that the '926 patent is limited to automatic retraction,
surrendering the possibility of manually retracting from the child to adult
setting.

17

upheld, Volvo's accused products did not infringe the '926
patent. (See Mot. to Dismiss Br. at 2)

Rule 41(a)(2) provides that after a defendant has served an
answer or motion for summary judgment:

> [A]n action may be dismissed at the
> plaintiff's request only by court order, on
> terms that the court considers proper. If a
> defendant has pleaded a counterclaim before
> being served with the plaintiff's motion to
> dismiss, the action may be dismissed over the
> defendant's objection only if the counterclaim
> can remain pending for independent
> adjudication. Unless the order states
> otherwise, a dismissal under this paragraph
> (2) is without prejudice.

A plaintiff's voluntary dismissal under Rule 41(a)(2) requires
court approval, though the general rule provides that such a
motion should be granted liberally. *Baldinger v. Cronin*, 535 F.
App'x 78, 80 (3d Cir. Aug. 13, 2013) (per curiam).

Upon Lugus's proposed stipulation of dismissal, Volvo
raised strong objections to Lugus's voluntary dismissal.
Specifically, Volvo feared that Lugus's proposed stipulation of
dismissal would be insufficient for the Federal Circuit to
"discern which of [this Court's] construction rulings would
actually affect the issue of infringement." *Jang v. Bos. Sci.
Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008). As a result, the
parties risked that the Federal Circuit might remand the case
back to this Court for specific findings concerning
infringement. *See id.* at 1335 ("The Courts of Appeals in

18

general and our court in particular have recognized that a
remand for clarification is appropriate where a judgment is
ambiguous."). In addition, Volvo argued that Rule 41(a)(2)
dismissal would not resolve the pending case or controversy
because Volvo has asserted a counterclaim seeking a judgment of
invalidity of the '926 patent.

Despite the parties' dispute over Rule 41, both Lugus's
motion and Volvo's counterclaim are rendered moot by this
Court's grant of summary judgment following claim construction.
In determining the basis for a judgment of non-infringement of
the '926 patent, the parties may litigate any appeal with a full
description of the basis for non-infringement. Moreover, the
prompt briefing and decision of Volvo's summary judgment motion
grants Lugus the relief it sought through its proposed voluntary
dismissal with prejudice — an adverse judgment with prejudice
and therefore the opportunity to challenge this Court's claim
constructions and basis for non-infringement on appeal.

Following the finding of non-infringement described *supra*,
Volvo's invalidity counterclaim is also rendered moot. In the
present matter, Volvo's counterclaim for invalidity operates as
a defense to Lugus's claims of infringement, but having
determined that Volvo's product is non-infringing, Volvo can no
longer, "under all the circumstances, show that there is a
substantial controversy, between the parties having adverse

19

**-Add. 75-**

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)). The Court will dismiss the counterclaim without prejudice given that no substantial controversy between Volvo and Lugus remains. This resolves all of the outstanding claims in the case and permits the parties to fully litigate any grounds they may have for appeal.

## VI.

For the reasons set forth above, Volvo's motion for summary judgment will be granted. In addition, Lugus's motion to dismiss will be denied as moot. Volvo's pending counterclaim for invalidity of the '926 patent, effectively a defense to Plaintiff's claims of infringement, is also rendered moot in light of this Court's determination that Volvo's product does not infringe upon the '926 patent. An appropriate Order accompanies this Opinion.

Date: 7-23-14

s/ Joseph E. Irenas

**JOSEPH E. IRENAS, S.U.S.D.J.**

# United States Patent [19]

## Parsons

| | |
|---|---|
| [11] **Patent Number:** | **5,806,926** |
| [45] **Date of Patent:** | **Sep. 15, 1998** |

US005806926A

[54] **CONVERTIBLE VEHICLE CHILD SAFETY SEAT**

[76] Inventor: **David A. Parsons**, 3904 S. View Ct., Jefferson, Md. 21755

[21] Appl. No.: **897,025**

[22] Filed: **Jul. 18, 1997**

[51] Int. Cl.⁶ ..................................................... A47C 15/00
[52] U.S. Cl. ............................ 297/238; 297/14; 297/234
[58] Field of Search ............................ 297/238, 14, 112, 297/113, 250.1, 232, 234, 237, 332, 333

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,594,037 | 7/1971 | Sherman | 297/14 |
| 3,762,764 | 10/1973 | McJunkin | 297/14 |
| 4,533,176 | 8/1985 | Wyttenbach | 297/238 |
| 5,380,060 | 1/1995 | Sponsler et al. | 297/238 |
| 5,588,700 | 12/1996 | Homier | 297/238 |

| | | | |
|---|---|---|---|
| 5,609,392 | 3/1997 | Stigson | 297/234 X |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2241186 | 3/1995 | France | 297/332 |

*Primary Examiner*—Laurie K. Cranmer
*Attorney, Agent, or Firm*—Michael W. York

[57] **ABSTRACT**

A convertible vehicle child safety seat that permits the seat to be safely used by a child as well as by an adult without any modification of the seat. The convertible vehicle child safety seat is easily operated by any adult passenger of a vehicle without any special training or instructions. The convertible vehicle child safety seat automatically converts to a seat for an adult when it is not in use by a child. The convertible vehicle child safety seat is particularly suited for use in public transportation vehicles such as buses, railway passenger cars and the like, particularly since such vehicles have no provisions for protecting young children.

**6 Claims, 2 Drawing Sheets**



LUGUS - APRIL 19 - CORRECTED -000104
**-Add. 77-**



FIG. 1

**-Add. 78-**



*FIG. 2*

*FIG. 3*

5,806,926

| 1 | 2 |

## CONVERTIBLE VEHICLE CHILD SAFETY SEAT

### BACKGROUND OF THE INVENTION

Currently many passenger type vehicles with seats for passengers lack safety belts to restrain or hold the passenger in the vehicle seat. An exception to this is seats in aircraft. Consequently, the occupant of the vehicle seat can be thrown about in the vehicle if the vehicle is subject to sudden movements of the vehicle that could be caused by emergency stops or movements of the vehicle to avoid an accident. This is usually not that detrimental when the occupants of the vehicle seats are adults who are capable of grabbing on to the seat or other surrounding structure to avoid being thrown off of the seat. However, in the case of children, they lack the capability and strength to prevent themselves from being thrown off of their seats.

Consequently, a definite problem exists that needs to be addressed to prevent possible injury or even death to children that occupy passenger seats in many current vehicles. The types of vehicles that are involved include but are not limited to public transportation buses of all types, town buses, school buses, railway passenger cars, and passenger ships. One reason child seat belts and safety seats do not exist on such vehicles is the need to readily have the seats available for use by both adults and children and safety seats and the like would interfere with the ready use of the seat by an adult passenger. Consequently, a definite need exists for a child safety seat that readily permits the seat to be used by an adult.

The child safety seat ideally should not require the assistance of the bus driver or similar vehicle operator or another member of the crew or staff of the vehicle to operate since that detracts from the driver's or other person's primary duties and also increases the cost associated with the use of the child's safety seat. Therefore, a child safety seat that can be readily operated by a vehicle passenger as opposed to the vehicle driver or staff is highly desirable.

The present convertible vehicle child safety seat is specially suited for public mass transit vehicles such as buses, subway cars, and trains that currently do not have provisions for restraining a child with safety straps or the like. This provides added stability for the child or youngster when the vehicle is turning, stopping, and accelerating. With this invention, instead of a child getting thrown about and possibly knocked off the seat and injured, the child is securely restrained on the seat. This seat invention also provides added protection in case of an accident and this seat invention is easily transformed for use by an adult.

The convertible vehicle child safety seat invention is hidden away when it is not in use and the seat looks very similar to any other seat in a vehicle and that is comfortably used by an adult when it is not occupied by a child. The invention can be manufactured as a replacement to the existing seats or could be used to retrofit current vehicle seats.

### SUMMARY OF THE INVENTION

This invention relates to vehicle seats and more particularly to seats for safely seating a child occupant of the seat that can safely be used by children or can be used by adults.

It is an object of the invention to provide a convertible vehicle child safety seat that is capable of being used by both a child and an adult.

It is an object of the invention to provide a convertible vehicle child safety seat that automatically converts to a seat for adult use when it is not occupied by a child.

It is an object of the invention to provide a convertible vehicle child safety seat that automatically converts to a seat for adult use when it is not occupied by a child through retraction of the child seat portion.

It is an object of the invention to provide a convertible vehicle child safety seat that automatically converts to a seat for adult use when it is not occupied by a child through retraction of the child seat portion into the back portion of the main seat.

It is an object of the invention to provide a convertible vehicle child safety seat that automatically converts to a seat for adult use when it is not occupied by a child through retraction of the child seat portion into the back portion of the main seat that is accomplished by a piston assembly.

It is an object of the invention to provide a convertible vehicle child safety seat that automatically converts to a seat for adult use when it is not occupied by a child through retraction of the child seat portion into the back portion of the main seat that is accomplished by a piston assembly with a piston that decompresses or retracts when the child is removed from the seat.

These and other objects of the invention will be apparent from the invention that includes a convertible vehicle child safety seat that permits the seat to be safely used by a child as well as by an adult without any modification of the seat. The convertible vehicle child safety seat is easily operated by any adult passenger of a vehicle without any special training or instructions. The convertible vehicle child safety seat automatically converts to a seat for an adult when it is not in use by a child. The convertible vehicle child safety seat is particularly suited for use in public transportation vehicles such as buses, railway passenger cars and the like, particularly since such vehicles have no seating provisions for protecting young children.

### BRIEF DESCRIPTION OF THE DRAWINGS

The invention will be hereinafter Lore fully described with respect to the accompanying drawings in which:

FIG. 1 is a perspective of the convertible vehicle child safety seat invention with certain portions thereof broken away to illustrate important parts of the invention;

FIG. 2 is a sectional view of a portion of the structure illustrated in FIG. 1 taken substantially in the direction 2—2 thereof; and

FIG. 3 is a sectional view of a portion of the structure illustrated in FIG. 1 taken substantially in the direction 3—3 thereof.

### DETAILED DESCRIPTION OF THE INVENTION

Referring first to FIG. 1, the convertible vehicle child safety seat invention is illustrated and is designated generally by the number 10. As illustrated, the convertible vehicle child safety seat 10 has two identical seats located side by side that are designated generally by the numbers 12 and 14 that are contained in or supported by a conventional combined support unit 16. The seat 12 illustrates the seat in its deployed position for a child and the seat 14 illustrates the seat in its undeployed position for use as an adult seat. The seat 12 or 14 has a pivoting back portion 18 that, as illustrated for the seat 12, can be manually pulled forward and downward and as illustrated in the seat 14 can form part of the normal seat back which makes the seat hardly distinguishable from a conventional vehicle seat.

As illustrated in FIG. 1, the child safety seat portion is designated generally by the number 20 and comprises a

5,806,926

3

generally Y-shaped safety harness 22 that has two belts 24 and 26 that are sized and shaped to fit over the shoulders of the child. The upper portions of these belts are secured to the seat back by bolts or the like as illustrated by the bolt 30. The belts 24 and 26 slide through a flexible foam or other soft material chest protecting member 32 that is sized and shaped to fit against the chest of the child that is occupying the seat 12.

As also illustrated in FIG. 1, the lower end portions 34 and 36 of the belts 24 and 26 slide through a slot 38 in a fastener 40. This fastener 40 fits into a slot 42 in the seat back portion 18 when the seat back portion is in its downward rotational position as illustrated for the seat 12. The fastener 40 also has a slot 44 located in its lower end portion that is sized and shaped to be engaged by the projecting end portion 46 of a spring loaded plunger 48 that is biased rearward by a compressed coil spring 50. The plunger 48 has a generally T-shaped handle 52 on its outer end that projects outward from the forward portion 54 of the seat and this permits the fastener 40 to be released when it is pulled manually outward to further compress the coil spring 50.

As further illustrated in FIG. 1, the seat 12 or 14 is provided with a contracting piston 56 that has its forward portion 58 secured to the forward portion 54 of the seat and the rear portion 60 of its piston rod 62 pivotally secured to the rear portion 64 of the pivoting back portion 18 of the seat in such a manner as to cause the seat back portion 18 to pivot into its upward position as illustrated for the seat 14 when the handle 52 is pulled outward and the child is removed from the seat back portion 18. As illustrated for the seat 14, with the seat back portion 18 in its upward position the child safety portion is stored behind the seat back portion 18 and this permits the seat 18 to be used in a normal fashion by an adult passenger.

FIG. 2 illustrates in greater detail certain features of the fastener 40 and the spring loaded plunger 48 and associated structure. As previously indicated, the fastener 40 slides into an aperture or slot 42 in the seat back, but it also slides into a suitably sized and shaped slot 66 in the bottom 68 of the seat 12 or 14. It will be noted that the end portion 46 has a sloping cam surface 70 so that downward manual pressure on the fastener 40 causes the end portion 72 of the fastener 40 to force the plunger outward or toward the forward portion 54 of the seat 12 or 14. The projection 46 will then be forced into the slot 44 of the fastener 40. This results due to the action or force of the coil spring 50 that has one end 74 pressing against the end 76 of a tubular housing 78 and the other end 80 pressing against a circular collar 82 that forms part of or is rigidly secured to the plunger 48.

FIG. 3 illustrates in greater detail the contracting piston 56. As illustrated, the forward portion 58 of the piston 56 is pivotally connected to the forward portion 54 of the seat 12 or 14 through the use of a bushing 84 and an associated bolt 86. Also, the rear or outer end portion 60 of its piston rod 62 is pivotally connected to a downward projection 88 of the back portion 18 by a bushing 90 and associated bolt 92. The seat back portion 18 is pivotally connected to the seat frame 94 through a bushing 96 and an associated bolt 98. Consequently, when pressure in the letter P is not applied to the seat back portion 18, the rod 62 contracts and pulls inward to apply a force in the direction indicated by the I on the portion 88 to cause the seat portion 18 to rotate upward as indicated by the letter U about the bushing 96. As a consequence, the seat back 18 assumes the position indicated in FIG. 1 for the seat 14.

4

The convertible vehicle child safety seat 10 is made and used in the following manner. All of the components of the invention 10 are well known in the art and are conventional in nature and made of conventional materials. This includes the plunger 48 as well as the piston 56. However, their assembly and locations as previously described is novel. In order to use the invention 10, the pivoting back portion 18 is manually pulled forward by an adult passenger and the child is then placed upon the upper portion of this pivoting back portion 18. The weight of the child (indicated by the letter P) holds the pivoting back portion 18 in its downward position as indicated in FIG. 1 for the seat 12. The adult then places the Y-shaped safety harness 22 that has the belts 24 and 26 over the chest of the child and inserts the fastener 40 into the slot 42. This secures the belts 24 and 26 in place along with the chest protector member 32 to safely secure the child in place. Adjustments to the belt 24 and 26 tension can be made by pulling on the lower belt portions 34 and 36 by pushing in on them.

At the appropriate time, when the child is to be released from the seat 12, an adult passenger merely pulls out on the T-shaped handle 52 to release the plunger 48 and hence the fastener 40 and the associated harness 22. This permits the child to be removed from the seat back portion 18 and in view of the previously described contracting piston 56, the seat assumes the position illustrated in FIG. 1 for the seat 14 to allow normal seating of an adult passenger.

Although the invention has been described in considerable detail with reference to a certain preferred embodiment it will be appreciated and understood that various changes and modifications may be made without departing from the spirit and scope of the invention as defined in the appended claims.

What is claimed is:

1. A adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle comprising an adult seat, a child safety seat, said child safety seat being part of said adult seat and having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat.

2. The adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle of claim 1 wherein said child safety seat also has extension means for permitting the child safety seat to be extended to be used by a child.

3. The adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle of claim 2 wherein said child safety seat has safety straps.

4. The adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle of claim 3 further comprising latch means associated with said safety straps for securing a child in said child safety seat.

5. The adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle of claim 4 wherein said latching means has associated releasing means.

6. The adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle of claim 5 wherein said adult seat has a forward portion and said releasing means is located on the forward portion of said adult seat.

* * * * *

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 21, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

| | |
|---|---|
| Matthew J. Moore | Arnold B. Calmann |
| Gabriel Bell | SAIBER LLC |
| Robert J. Gajarsa | One Gateway Center |
| Jonathan D. Link | 10th Floor, Suite 500 |
| LATHAM & WATKINS LLP | Newark, NJ  07102 |
| 555 11th Street, NW | (973) 622-3333 |
| Suite 1000 | |
| Washington, DC  20004 | |
| (202) 739-3000 | |
| | |
| *Counsel for Appellees* | *Counsel for Appellees* |

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219
(626) 799-0998

## <u>CERTIFICATE OF COMPLIANCE</u>
**With Type-Volume Limitation, Typeface Requirements,
And Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains <u>8,073</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2013</u> in <u>14 Times New Roman</u>.


Dated: October 21, 2014                    /s/ John R. Fuisz
                                                        John R. Fuisz

                                                        *Counsel for Appellant*