No. 2014-1743

# United States Court of Appeals for the Federal Circuit

———————————

LUGUS IP LLC,

*Plaintiff-Appellant*,

v.

VOLVO CAR CORPORATION AND
VOLVO CARS OF NORTH AMERICA LLC,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the District of New Jersey
in Case No. 1:12-cv-02906-JEI-JS, Judge Joseph E. Irenas.

---

## BRIEF OF APPELLEES

---

| | |
|---|---|
| Arnold B. Calmann<br>SAIBER LLC<br>One Gateway Center<br>Suite 1000<br>Newark, NJ 07102<br>(973) 622-3333 | Matthew J. Moore<br>Jonathan D. Link<br>Gabriel K. Bell<br>Robert J. Gajarsa<br>LATHAM & WATKINS LLP<br>555 Eleventh St., NW<br>Suite 1000<br>Washington, DC 20004<br>(202) 637-2200<br><br>*Counsel for Appellees* |

Dated: January 5, 2015

United States Patent No. 5,806,926, claim 1 (A81):

1.      A adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle comprising an adult seat, a child safety seat,    said child safety seat being part of said adult seat and having retracting means for automatically retracting said child safety seat into a portion of said adult seat to form part of a fully contoured adult seat when said child is not located in said child safety seat.

# CERTIFICATE OF INTEREST

Counsel for Appellees certifies the following:

1. The full name of every party or amicus curiae represented by me is:

   Volvo Car Corporation
   Volvo Cars of North America LLC

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Volvo Car Corporation is a Swedish non-governmental corporate party, and there is no publicly held corporation that owns 10% or more of its stock.

   Volvo Cars of North America LLC is a non-governmental corporate party, and is a wholly-owned subsidiary of Volvo Car Corporation.

4. The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

   **Latham & Watkins LLP**: Matthew J. Moore, Jonathan D. Link, Gabriel K. Bell, John S. Cooper, Yury Kapgan (former), Kathy Yu, William W. Yu (former), Robert J. Gajarsa.

   **Saiber LLC:** Arnold B. Calmann, Jeffrey S. Soos, Rita Darlene Turner.

Dated: January 5, 2015

Respectfully submitted,

*/s/ Matthew J. Moore*
Matthew J. Moore
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
matthew.moore@lw.com

*Counsel for Appellees*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF RELATED CASES ...................................................1

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE.................................................................3

      A.     The Parties ...............................................................................3

      B.     The Patent-In-Suit And Prior Art ........................................3

      C.     The Accused Volvo Booster Cushions ..............................10

      D.     District Court Proceedings ..................................................14

SUMMARY OF THE ARGUMENT .....................................................19

ARGUMENT ........................................................................................24

I.      STANDARD OF REVIEW .......................................................24

II.    THE DISTRICT COURT CORRECTLY ENTERED SUMMARY
      JUDGMENT OF NONINFRINGEMENT ...................................25

      A.     The Volvo Booster Cushions Do Not Automatically Retract To
            Form Part Of A Fully Contoured Adult Seat .....................26

      B.     The Volvo Booster Cushions Do Not Automatically Retract
            *When* A Child Is Not Located In Them .............................39

      C.     The District Court's Doctrine Of Equivalents Decision Should
            Not Be Disturbed.................................................................49

      D.     The District Court Did Not Err In Construing The
            Corresponding Structure For "Retracting Means"..............49

CONCLUSION .....................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Applied Medical Resources Corp. v. United States Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006) ..........................................................24

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*,
   731 F.2d 831 (Fed. Cir. 1984) ...........................................................25

*Beneficial Innovations, Inc. v. Blockdot, Inc.*,
   Nos. 2:07-cv-263, 2:07-cv-555, 2010 WL 1441779 (E.D. Tex. Apr.
   12, 2010) ..............................................................................................40

*Eaton Corp. v. Rockwell International Corp.*,
   323 F.3d 1332 (Fed. Cir. 2003) .........................................................33

*Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*,
   222 F.3d 951 (Fed. Cir. 2000) ...........................................................30

*Homeland Housewares, LLC v. Sorensen Research & Development
   Trust*,
   581 F. App'x 869 (Fed. Cir. 2014) .....................................................39

*Info-Hold, Inc. v. Muzak Holdings LLC*,
   No. 1:11-cv-283, 2012 WL 3930376 (S.D. Ohio Sept. 10, 2012)......40

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*,
   909 F.2d 1524 (3d Cir. 1990) .............................................................47

*Kao Corp. v. Unilever United States, Inc.*,
   441 F.3d 963 (Fed. Cir. 2006) ...........................................................50

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
   919 F.2d 1579 (Fed. Cir. 1990) .........................................................39

*Moore U.S.A., Inc. v. Standard Register Co.*,
   229 F.3d 1091 (Fed. Cir. 2000) .........................................................39

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) .........................................................42

**Page(s)**

*Noah Systems, Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012) ........................................................50

*Philbin v. Trans Union Corp.*,
101 F.3d 957 (3d Cir. 1996) ..............................................................38

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 900 (2014) ...............47

*Renishaw PLC v. Marposs Societa' Per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998) .............................................23, 40, 42

*Space Systems/Loral, Inc. v. Lockheed Martin Corp.*,
243 F.3d 558, 2000 WL 1205154 (Fed. Cir. Aug. 23, 2000) ............................34

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) .........................................................25

*TechSearch, L.L.C. v. Intel Corp.*,
286 F.3d 1360 (Fed. Cir. 2002) ....................................25, 37, 39, 49

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997).........................................................................43

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
904 F.2d 677 (Fed. Cir. 1990) ....................................................21, 35

*Yeu v. Kim*,
940 F.2d 678, 1991 WL 142608 (Fed. Cir. July 31, 1991) ................................39

## STATUTES AND RULES

28 U.S.C. § 1295(a)(1)....................................................................1

28 U.S.C. § 1404..........................................................................14

35 U.S.C. § 112(f)......................................................................2, 24

Fed. R. Evid. 701(c) ......................................................................38

Fed. R. Evid. 801(c) ......................................................................38

**Page(s)**

Fed. R. Evid. 901(a) ................................................................................ 38

Fed. R. Evid. 901(b)(9) ........................................................................... 38

## STATEMENT OF RELATED CASES

Appellees (collectively, "Volvo") agree with Appellant ("Lugus") that there are no related cases.

## STATEMENT OF JURISDICTION

This Court has exclusive jurisdiction under 28 U.S.C. § 1295(a)(1) over Lugus's appeal of the district court's grant of summary judgment that Volvo does not infringe United States Patent No. 5,806,926 (the "'926 patent").

## STATEMENT OF THE ISSUES

1.    Whether the district court properly granted summary judgment of noninfringement because the accused Volvo booster cushions (shown below) do not "automatically retract[] . . . to form part of a fully contoured adult seat" as required by claim 1 of the '926 patent.  As shown below in the Volvo's user guides, a user must pull a handle to unlock the seat from a child booster position and then press the seat down into a locked adult position.



2.    Whether the district court properly granted summary judgment of noninfringement because the accused Volvo booster cushions do not automatically retract "when" the child is "not located in" the child safety seat as also required by claim 1 of the '926 patent.

3.    Whether the district court properly construed the corresponding structure for the "retracting means" required by claim 1 when it included all the structures necessary for performing the recited function for that term under 35 U.S.C. § 112(f).

## STATEMENT OF THE CASE

### A.    The Parties

Lugus is a limited liability company that owns the '926 patent. A106; A108. It does not manufacture, market, sell, or otherwise commercialize any product covered by or related to the patent. *See* A108.

Volvo Car Corporation is one of the world's leading car manufacturers and is located in Sweden. It produces the Volvo vehicles that offer the manually-retracting booster cushions accused by Lugus of infringing the '926 patent. Those vehicles are sold in the United States through Volvo Cars of North America LLC.

### B.    The Patent-In-Suit And Prior Art

The '926 patent is directed to a child safety seat that automatically retracts to form part of an adult seat when a child is not located in it. *See* A81 (4:36-43). The claimed invention originates from a crowded field of prior art. *See* A230-31.

#### 1.    Relevant Prior Art

During prosecution of the '926 patent, the examiner rejected almost all of the patentee's original claims as "clearly anticipated" by several pieces of prior art, including United States Patent Nos. 5,609,392 (the "'392 patent," issued to "Stigson"). A230-32. The examiner also listed numerous other references that "teach devices similar to that of the instant invention," including United States Patent No. 4,533,176 (the "'176 patent," issued to "Wyttenbach"). A231.

### (a)    The Stigson Prior Art Patent

The Stigson patent discloses a child booster cushion that manually retracts to form a portion of the bottom section of an adult car seat.  It claims, in relevant part, "a movable cushion insert" with a "lower passenger seating position . . . aligned with . . . [a] seating surface" and a "raised child seating position"; and a "release means" to unlock the cushion so it can be moved between the positions.  A487-88 (4:50-5:10).



A484 (Fig. 1).  "When a user desires to move the cushion insert 16 from the raised position, the user simply presses the push button 26 and applies a downward force onto the cushion insert 16."  A487 (4:14-16).



A484 (Figs. 1, 2); *see* A486 (2:1-6).

### (b) The Wyttenbach Prior Art Patent

The Wyttenbach patent, titled "Built-in Automatic Infant Restraint Seat," discloses and claims a child safety seat that, at the touch of a button, *automatically* deploys from or *automatically retracts* into the rear cushion of an adult car seat. *See* A502; A507-09 (4:19-66, 5:9-50, 6:22-34, 6:43–7:4, 7:31-35, 7:46–8:3).



A503 (Fig. 1); A505 (Fig. 7). "[T]he child restraint and protection seat of this invention in combination with the adult vehicle seat may include linkages and drive mechanisms such that the seat is positioned and made available for use by the

child *by the simple pushing of a button*." A509 (6:23-27) (emphasis added). As the patent "show[s] in FIG. 7, there may be included small drive motors such as drive motor 98 and connected to linkage or drive screw 100 to rotate the front section 44 . . . to reveal the child's seat" or "to rotate the child's seat 52 into position for receiving and protecting the small child." *Id.* (6:27-34).

### 2.    The '926 Patent

The '926 patent originated from United States Patent Application No. 897,025 (the "'025 application"). The first two claims of that application read:

> 1.    A vehicle child safety seat for protecting a child while seated in a vehicle wherein said child safety seat is formed as *part of an adult seat*.
>
> 2.    The vehicle child safety seat of claim 1 wherein said child safety seat *is retractable* into a portion of said adult seat.

A223 (emphasis added). Those claims did not require automatic retraction of a child safety seat, did not require automatic retraction to form part of a fully contoured adult seat, and did not contain any limitation on when retraction occurred. *See id.* Both of those claims were rejected as "clearly anticipated" by the Stigson patent and other prior art. A230-31. The examiner also noted that numerous prior art references, such as the Wyttenbach patent, taught similar devices. A231.

Although those two independent claims of the '025 application were rejected in light of the prior art, the examiner stated that dependent claims 9 and 10 "would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." *Id.*

> 9.     The vehicle child safety seat of claim 2 wherein said child safety seat is *automatically* retractable *when said child is not located in said seat.*
>
> 10.     The vehicle child safety seat of claim 9 wherein said child safety seat retraction *provides a fully contoured adult seat.*

A223 (emphasis added).

In response to the examiner's statements, the applicant rewrote his claims and included the limitations of original claims 1, 2, 9, and 10 in one independent claim (issued claim 1):

> 1.     A adult vehicle seat in combination with a child safety seat for protecting a child while seated in a vehicle comprising an adult seat, a child safety seat,   said   child safety seat being part of said adult seat and having retracting means for *automatically retracting* said child safety seat into a portion of said adult seat *to form part of a fully contoured* adult seat *when said child is not located in said child safety seat.*

A81 (4:36-43) (emphasis added); *see* A234-37.

As the Summary of the Invention explains, "[i]t is an object of the invention to provide a convertible vehicle child safety seat that automatically converts to a seat for adult use when it is not occupied by a child"—i.e., from a deployed child

safety seat (right in Fig. 1 below) to an adult seat (left in Fig. 1 below).  A80 (1:65-67); *see also* A80 (2:29-31).



FIG. 1

A78 (Fig. 1).

When the pivoting portion 18 of the seat is pulled forward and downward to serve as the child seat (on the right in Fig. 1), it reveals a Y-shaped child safety harness that serves as a child safety belt.  A81 (3:1-3).  To fasten the child in the seat, the harness is placed over the child's shoulders and "the lower end portions 34 and 36 of the belts 24 and 26 slide through a slot 38 in a fastener 40," between the child's legs.  A81 (3:9-11).  "This fastener 40 fits into a slot 42 in the seat back portion 18 when the seat back portion is in its downward rotational position."  A81 (3:11-13).  The fastener is held in place by the projecting end of a T-Shaped plunger:  "[t]he fastener 40 also has a slot 44 located in its lower end portion . . . to be engaged by the projecting end portion 46 of a spring loaded plunger 48."  A81 (3:13-16).  Pulling the T-shaped handle 52 "permits the fastener 40 to be released" and "permits the child to be removed from the seat back portion 18" because the harness is released.  A81 (3:18-21, 4:24-25).

"[W]hen the handle 52 is pulled outward and the child is removed from the seat back portion 18," the seat automatically converts to a fully contoured seat for use by an adult.  A81 (3:26-34); *see also* A80 (2:22-31) (explaining that "the invention" includes a "convertible vehicle child safety seat" that "automatically converts to a seat for an adult when it is not in use by a child").  That automatic

retraction of the child safety seat is caused by the "piston assembly" depicted in Figure 3 below.



*FIG. 3*

A79 (Fig. 3).  When a child is sitting in the deployed seat, a pressure "P" is exerted on the seat back portion 18, which prevents the piston assembly from retracting. *See* A80 (2:65).  But "when [that] pressure indicted by the letter P is not applied to the seat back portion 18, the rod 62 contracts and pulls inward to apply a force . . . to cause the seat portion 18 to rotate upward" and, "[a]s a consequence, the seat back 18 assumes the position indicated in FIG. 1 for the seat 14" for "use[] in an normal fashion by an adult passenger."  A81 (3:59-66, 3:34-35); *see also id.* (4:27-28) (stating claimed seat automatically "assumes the position . . . to allow normal seating of an adult passenger").

## C.    The Accused Volvo Booster Cushions

Lugus's infringement claims are directed at Volvo's manually-retracting single-stage and two-stage booster cushions.  A108.

The two-stage booster cushions can be raised to two different heights ("Stage 1" and "Stage 2") so that children of varying weights and heights can safely sit in the rear seat while using standard three-point seatbelts.  A617; A622; A627.

 

A263; A617.  They are  normally "stowed" as part of an adult car seat.  A617-19; A622-24; A627-29.

To raise the two-stage booster cushion to a "Stage 1" position (for use by a larger child), a user must manually "[p]ull the handle (1) forward and upward (2) to release the booster cushion," and then "[p]ress the booster cushion rearward to lock it in position."  A618; A623; A628; *see* A636.



A623; A628; *see* A618.

11

To raise the booster cushion to a higher "Stage 2" position (for use by a smaller child), the user must "press [a] button . . . [and] [l]ift the front edge of the booster cushion and press it rearward toward the backrest to lock it in position." A618; A623; A628.



A623; A628; *see* A618.

When the two-stage booster cushion is in either the "Stage 1" or "Stage 2" position, it is locked safely in place. *See* A618-19; A623-24; A628-29. To move the booster cushion back to its original "stowed" position so that the seat can be used by an adult, a user must manually "[p]ull the handle forward to release the booster cushion" from its locked position and then "[p]ress down on the center of the booster cushion." A619; A624; A629; *see* A636.



A624; A629; *see* A619. Without pulling the handle and pressing down, the booster cushion cannot return to its stowed position—regardless of whether a child is using

12

it.  *See* A618-19; A623-24; A628-29.  The final step of recreating the adult seat by pressing the booster cushion into the stowed position requires approximately 53 pounds of force.  *See* A636; A794-95.

Volvo's single-stage booster cushion functions, in all relevant respects, in a an identical manual fashion.  It must be deployed by pulling a handle and pushing the cushion backwards "until it locks in place."  A633.



*Id.*  When the child is removed from it, the one-stage booster cushion remains in a locked position and does not retract.  *See id.*  To lower the cushion back to its original stowed position and form an adult seat, a user must "[p]ull the handle at the front of the cushion forward" and manually "press it down until it locks in place."  *Id.*  Just like the two-stage cushion, the one-stage cushion requires approximately 53 pounds of force to be stowed.  *See id.*; A794-95.  There is no dispute that both the one-stage and two-stage booster cushions operate the same for the purposes of Volvo's noninfringement positions presented here.

### D.    District Court Proceedings

In December 2011, Lugus filed suit against Volvo in the Eastern District of Virginia, alleging infringement of the '926 patent.  A105-14.   The action was transferred to the District of New Jersey on May 15, 2012, A90, pursuant to Volvo's request under 28 U.S.C. § 1404.  After the claim construction briefing, the court stayed discovery pending issuance of a *Markman* order and allowed Volvo to file a summary judgment motion.   A96.   On May 9, 2014, Volvo moved for summary judgment of noninfringement.  *Id.*

On May 20, 2014, the district court entered its claim construction order construing several terms in the '926 patent.  A18-56 (*Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906, 2014 WL 2094086 (D.N.J. May 20, 2014)).  Relevant here, the court construed three terms within the functional language for the "retracting means" of claim 1:  (1) "automatically"; (2) "into a portion of said adult seat to form part of a fully contoured adult seat"; and (3) "when."  A35.

The court first explained, and the parties agreed, that there was no reason to look beyond the "generally understood definition" of "automatically"—which the parties agreed to be 'some kind of 'self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation.'"   A35-36 (citation omitted).  The court found that the '926 patent repeatedly explained how the child safety seat "automatically" converted back into an adult seat in contrast to

14

"various manual tasks, like the manual pulling of pivoting back portion 18 to bring the adult seat back down into position for the child safety seat." A36 (citing A81 (4:4-10)). Thus, there was no ambiguity that the ordinary meaning of "automatically" controlled and "no indication that the patent g[ave] the term 'automatically' any other meaning." A36.

Next, the court determined that the phrase "into a portion of said adult seat to form part of a fully contoured adult seat" is part of the claimed function of the "retracting means." A37. The court held that, contrary to Lugus's argument, "there is no grammatical rationale for separating" the term from the function of the "retracting means." A32. Also, the court found, "Lugus concedes that it does not dispute Volvo's proposed plain language interpretation of 'portion' or 'part of.'" A37.

Last, the district court construed the limitation requiring that automatic retraction occur "*when* said child is not located in said child safety seat." A37-40. The court recognized the parties disputed the plain meaning of "when" in the context of the '926 patent and looked to the intrinsic evidence to select between the competing options. A38. The court looked to the claim language that requires "automatically retracting … when said child is not located in the seat." A38. The court also looked to the Summary of the Invention that stated it is an "object of the invention to provide a convertible vehicle child safety seat that automatically

converts to a seat for adult use when it is not occupied by a child through retraction of the child seat portion . . . by a piston assembly . . . when the child is removed from the seat." A39 (quoting A80 (2:15-21)). Furthermore, the court reasoned that "the patent specification explains that the seat 'pivot[s] into its upward position as illustrated for the seat 14 when the handle 52 is pulled outward and the child is removed from the seat back portion 18.'" *Id.* (quoting A81(3:27-30)). And "[i]mportantly, removing the child causes this retraction because '[t]he weight of the child (indicated by the letter P [best shown in Figure 3]) holds the pivoting back portion 18 in its downward position as indicated in FIG. 1 for the seat 12." *Id.* (alteration in original) (quoting A81 (4:10-12)). As a result, the court adopted Volvo's proposed construction—"in the event that"—because "it comports with the description contained in the '926 patent" and it is "consistent with the intrinsic evidence contained in the specification." A40.

The court considered and rejected Lugus's proposed construction "at or on which." A39. The court explained that, in Lugus's view, "the presence of the child is irrelevant to the operation of the automatic retraction." *Id.* "Lugus overlooks the role of the pressure of the child that appears throughout the '926 patent." A39-40. The court further explained that "[i]n essence, though the piston assembly may 'want' to automatically retract, it may only automatically retract at the time that the pressure from the child is removed." A40. Thus, the court agreed

16

that "'in the event that' properly reflects the fact that automatic retraction actually occurs at the time that the child is not located in the seat." A39.

In response to the court's claim constructions, Lugus moved to voluntarily dismiss its suit. A1032-43. In an attached stipulation, Lugus stated that, "in view of the Claim Construction Order, the Volvo two-stage and one-stage integrated child safety seats upon which discovery was provided do not infringe." A1040. Volvo opposed Lugus's motion because the proposed order did not adequately identify the basis for the dismissal. *See* A781-84.

On July 23, 2014, the district court granted Volvo's motion for summary judgment of noninfringement and denied as moot Lugus's motion to voluntarily dismiss. A57-76 (*Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906, 2014 WL 3611330 (D.N.J. July 23, 2014)). Based on its claim constructions, the district court held that the accused Volvo booster cushions lack the "retracting means" required by claim 1 for two independent reasons. A66-76.

First, the court held that the accused cushions do not "automatically retract to form part of a fully contoured adult seat." A68. Applying the plain meaning of that phrase, the court found "no dispute" that Volvo's booster cushion, "when transitioning from its child to adult settings, require[] a manual intervention . . . to form a portion of [a] fully contoured adult seat." A70. The court explained that, "[u]nlike [the invention covered by] Claim 1 of the '926 patent," Volvo's booster

17

cushion "does not transition from its child setting to its adult setting under a self-actuating procedure; rather, a user must manually press the Volvo seat-bottom from the elevated child position into the stowed adult position." *Id.*

Second, the court held that Volvo's booster cushions do not automatically retract "*when*"—i.e., *in the event that*—a child "is not located in said child safety seat." A67-69. The court found that, "unlike the limitation found in Claim 1 where retraction occurs when (in the event that, or at the instant that) the child's downward pressure is removed," the retraction process in the accused products "occurs independent of the removal of a child's downward pressure [from the booster cushion] and only when a user pulls the handle and pushes down on the seat cushion." A69.

The district court also found that prosecution history estoppel barred a finding of infringement under the doctrine of equivalents. The court explained that the originally drafted claims of the '926 patent broadly covered child safety seats that retracted manually or automatically. *See* A72-73. To overcome prior art in response to an anticipation rejection during prosecution, the patentees rewrote independent claim 1 to include the limitations of original claims 1, 2, 9, and 10. *See* A230-37. The court concluded, "the prosecution history demonstrates that the '926 patent is limited to automatic retraction, surrendering the possibility of manually retracting from the child to adult setting." A73 n.6. Therefore, because

18

"Lugus ha[d] failed to rebut th[at] presumptive surrender of equivalents," the court held that the doctrine of equivalents could not apply to the manually-retracting Volvo booster cushions.  A73.

The district court also rejected Lugus's request to postpone summary judgment and obtain additional discovery related to 2014 and 2015 model year booster cushions.  A63-65.  After noting that Lugus did not submit the affidavit required by Rule 56(d), the court determined that Lugus failed to "explain what information concerning the model year 2014 and 2015 products would preclude summary judgment" and that "there [was] no evidence to suggest that the design [of the accused booster cushions] is any different in [those] model years."  A64-65.

## SUMMARY OF THE ARGUMENT

The district court correctly entered summary judgment of noninfringement for two independent reasons.

1.  Volvo's booster cushions do not "automatically retract . . . to form part of a fully contoured adult seat."  All the evidence shows that Volvo cushions (shown below) are manually stowed into an adult seat when a user pulls a handle to release it from a child booster position and then presses the cushion down to lock it into the adult position—just like the Stigson prior art that these limitations were added to distinguish.  As shown below, a user must pull the handle to unlock the cushion

from the child booster position and press the seat downward to a locked adult position.



Lugus admits that "the [Volvo] booster is folded down . . . by pulling the handle outwards and pushing the booster downwards." A110.

Lugus argues that the partial or incomplete retraction of the cushion after the user pulls the handle to release the booster seat, but before the user presses the seat down to lock it in an adult position is sufficient to satisfy the claim limitation. Lugus Br. 12, 28-29, 31, 37. But it is not. The claim requires the seat to "automatically retract[] . . . to form part of a fully contoured adult seat." A user pulling a handle so the seat falls down to an intermediate position (i.e., a position in between the booster seat and adult seat) is manual, not automatic. The '926 patent itself describes "pull[ing]" a handle outwards as a manual operation, not automatic. *See* A81 (3:20-21, 3:41-46). And, this intermediate position the seat falls into is not a "fully contoured adult seat" because, as Lugus admits, it has not been pushed down into the stowed or locked into a secure, usable adult position. Lugus Br. 12, 36.

The Volvo booster cushions work like the Stigson prior art, which applicant expressly added this limitation to distinguish. In Stigson, "[w]hen a user desires to move the cushion insert 16 from the raised [booster] position, the user simply presses the push button 26 and applies a downward force onto the cushion insert 16." A487 (4:14-16). The claims cannot reach what was deliberately relinquished during prosecution to permit issuance. *See, e.g.*, *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990). For all these reasons, Volvo's seats cannot infringe claim 1 of the '926 patent literally or under the doctrine of equivalents.

Conversely, Lugus failed to present any potentially-admissible evidence to show that the accused cushions meet this limitation. It relies entirely on a testing video made by its president. Lugus Br. 31-37. But, as shown below, the video supports Volvo's position and, in any event, is inadmissible because the damaged partial seat in it cannot be identified as a Volvo product, was not installed in a Volvo vehicle during testing, was procured from a mysteriously unnamed "vendor," and has a "history" to which Lugus's president "cannot attest." A880; *see* A410 (district court noting that the seat in the video "is not a whole seat at all"). Lugus's lack of evidence on this limitation alone is fatal.

2. Volvo's booster cushions do not automatically retract "when said child is not located in said child safety seat." Volvo's cushions do not return into an adult

position when the child is not located in the seat. *See* A69; A619; A624; A629; *see also* A636; A794-95. As the district court found, Volvo's seats return to an adult position only when a user pulls the handle (or presses a button) to unlock or release the seat from the child booster position and then pushes the cushion down into the stowed, adult position. A69-70. If you lift a child from the Volvo booster seat, the cushion simply stays in the booster position unless a user pulls the handle and presses it down into the locked adult position.

The district court properly construed "when" accordingly to its plain meaning consistent with the intrinsic evidence. A37-40. The plain meaning of "automatically retracting . . . when said child is not located in said child safety seat" is that the "automatically retracting" starts "when the child is not located in the seat." A67-68. Consistently, the specification only describes or enables an invention where the "automatically retracting" occurs at the instant the child is removed from the seat. *See* A81 (3:22-30, 3:59-66, 4:24-28). The specification describes an invention where: when the pressure of a child is removed from the pivoting seat back portion 18, contracting piston 56 contracts to cause the seat back to rotate upward and backward to form a seat for normal adult use. *See* A80 (2:10-14); A81 (3:22-30, 3:59-66, 4:24-48). The specification never describes nor enables an invention where the seat "automatically retracts" at some later time or in response to any other actions. As a result, the district court's construction of

"when" as "in the event that" was proper because it is the plain meaning that most naturally aligns with the specification. *See* A37-40; A67-70; *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1251-52 (Fed. Cir. 1998).

Lugus argues "when" must be interpreted more broadly to mean "at some point" or "during the time that." Lugus Br. 17-19. But, as the district court explained, "[i]n view of this intrinsic evidence, the Court must reject Lugus's alternate proposed construction." A39. For example, contrary to the description of the invention, Lugus's construction would make "the presence of the child . . . irrelevant to the operation of the automatic retraction." *Id.* "Lugus overlooks the role of the pressure of the child that appears throughout the '926 patent . . . ." A39-40.

Under the district court's (correct) plain meaning construction of "when," Lugus has conceded noninfringement and this Court can affirm on that basis alone. *See* Lugus Br. 4; A810; A1040. In any event, the record evidence confirms that the limitation is not satisfied. As discussed, Volvo's booster seats can be retracted only if a user manually presses them into the stowed and locked adult seat. A619; A624; A629; A633; *see* A636.

Moreover, Lugus has failed to identify any evidence that Volvo's booster cushions satisfy this limitation. Lugus cites just one page of a Volvo document as proof that the presence (or location) of a child can affect the retraction of Volvo's

booster cushions. Lugus Br. 21-22. But that document is irrelevant. It has nothing to do with retraction—it only states that the Volvo two-stage cushion cannot be raised to the higher 2nd stage from the lower 1st stage if a child is using it. *See* A930. Once again, Lugus's lack of evidence independently justifies affirming the grant of summary judgment here.

3.    Lugus also argues that the district court erred by including superfluous structures when defining "retracting means" under 35 U.S.C. § 112(f). Lugus Br. 37-39. But the judgment did not turn on the corresponding structures for that term and, regardless, the district court properly included the structures to which Lugus objects because they are necessary to the function of the "retracting means." *See* A81 (3:23-66) (detailing how the forward portion 58 of contracting piston and the rear portion 60 of the piston rod work to secure the contracting piston 56 that uses the L-shaped pivoting back portion 18 to rotate the child seat upward).

The district court's judgment should be affirmed.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews *de novo* the district court's claim constructions and its grant of summary judgment of noninfringement. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1331 (Fed. Cir. 2006). After drawing "all reasonable inferences from the evidence in favor of the non-movant," summary

judgment of noninfringement is proper when that is the only conclusion that a reasonable jury could reach or "where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002); *see also Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326 (Fed. Cir. 2013). "The party opposing the motion must point to an evidentiary conflict created on the record"— "[m]ere denials or conclusory statements" are "insufficient." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).

## II.     THE DISTRICT COURT CORRECTLY ENTERED SUMMARY JUDGMENT OF NONINFRINGEMENT

The district court correctly granted summary judgment of noninfringement because the claimed "retracting means" must (a) "automatically retract[] . . . to form part of a fully contoured adult seat" and (b) "automatically retract[] . . . when said child is not located in said child safety seat," and the accused Volvo cushions do not satisfy either limitation. Lugus argues that the district court misconstrued those two terms and that there is evidence that the Volvo products meet those limitations. Lugus is wrong on all counts.

### A.    The Volvo Booster Cushions Do Not Automatically Retract To Form Part Of A Fully Contoured Adult Seat

#### 1.    The District Court Correctly Construed "Automatically Retracting . . . To Form Part Of A Fully Contoured Adult Seat"

The district court correctly held that the phrase "automatically" carried its plain and ordinary meaning, which, "[a]s the parties consented," is "generally understood as some kind of 'self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation.'"  A36 (quoting A150 (*Webster's Third New International Dictionary* 148 (1993))).  Lugus accepts this construction on appeal.  Lugus Br. 23.

The district court also correctly found that the terms "into a portion of said adult seat to form part of a fully contoured adult seat" should be given its plain meaning "in light of the parties' agreement that [the] plain meaning of these terms is appropriate."  A37.  The claim language and intrinsic record both require that the child seat must automatically retract "to form part of a fully contoured adult seat"—i.e., *incomplete* automatic retraction is not enough.  The plain meaning of "a fully contoured adult seat" excludes incomplete or partial retraction.  Consistently, the specification repeatedly and definitively states that the post-retraction seat must be readily and safely usable by an adult in a normal fashion: "a definite need exists for a child safety seat that *readily permits the seat to be used by an adult*," A80 (1:28-30) (emphasis added); "this seat invention is *easily*

*transformed for use by an adult*," *id.* (1:48-49) (emphasis added); "the seat is *comfortably used by an adult* when it is not occupied by a child," *id.* (1:52-54) (emphasis added); "the invention . . . permits the seat to be *safely used* by a child as well as *by an adult*," *id.* (2:22-26) (emphasis added); the "contracting piston . . . cause[s] the seat back portion 18 to pivot into its upward position . . . and th[at] permits the seat 18 to be used *in a normal fashion by an adult passenger*,"  A81 (3:23-35) (emphasis added); "in view of the previously described contracting piston 56, the seat assumes the position illustrated in FIG. 1 for the seat 14 to allow *normal seating of an adult passenger*," *id.* (4:26-28) (emphasis added).

A partially-retracted child seat is certainly not *fully* or *readily* useable by an adult—the very need the claimed invention supposedly addressed.  *See* A80 (1:28-30).  Nor is it *comfortably* or *safely* useable by an adult in a *normal* fashion.  No adult could comfortably, safely, or normally ride in a vehicle while sitting on a partially-retracted child safety seat.  On appeal, Lugus even *concedes* that "[w]hat this claim term means is that [the child seat] automatically retracts from a child position *all the way into* a fully contoured adult seat."  Lugus Br. 28 (emphasis added) (quoting A382).

Accordingly, the plain meaning of the phrase "automatically retracting . . . to form a portion of a fully contoured adult seat" requires a self-acting or self-

regulating mechanism to retract the child safety seat into a fully contoured adult seat.

Nonetheless, Lugus makes several strained arguments that the district court somehow implicitly erred in interpreting the plain meaning of the phrase. None of these arguments are persuasive.

First, Lugus does not dispute the parties' agreed upon construction of "automatically;" it only disputes how the construction was "further modified by the District Court." Lugus Br. 23. Lugus, however, never explains how the district court "further modified" this construction because it cannot. The district court never modified this construction.

Second, Lugus argues that the plain meaning of the phrase "fully contoured adult seat" should not exclude the preferred embodiment in Figure 1. Lugus Br. 24-27. Volvo agrees. More subtly, Lugus seems to be arguing that, the pivoting back portion of Figure 1 appears to extend out of the recess on one side and that therefore, the term "fully contoured adult seat" must permit the "part of the fully contoured adult seat" to extend out. Lugus is incorrect and misses the point. The pivoting back portion 18 in position 14 in Figure 1 forms "a fully contoured adult seat" because it is ready for normal adult use, not because of whether or not it extends out. In any event, Figure 1 is ambiguous. Moreover, there is no evidence that Figure 1 shows a slightly protruding back portion 18. Figure 1 shows the

pivoting back portion 18 flush with the recess. No one of ordinary skill in the art would view Figure 1 as Lugus suggests (and Lugus has not provided any evidence that they would). Lugus suggests only that the right side is slightly protruding, but does not argue the left side is—because it cannot. The left side is flush or, if anything, recessed. And it would not make any sense for one side to protrude and not the other.



A78 (Fig. 1). Lugus's bizarre interpretation of Figure 1 cannot overcome the plain claim language and weight of the intrinsic record, which make clear that the district court correctly held the retraction must be "automatic[]" and must result in a "fully formed adult seat." And further, it is well-established that patent figures are not drawn to scale unless otherwise indicated. *See Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000).

Third, Lugus argues that a "fully contoured adult seat" must be one that can be used by an adult and does not need to have a specific shape under the '926 patent. Lugus Br. 27. Volvo agrees. More specifically, Lugus appears to be arguing that the plain meaning of "automatically retracting . . . to form part of a fully contoured adult seat" should include incomplete or partial retraction of the child seat. But, incomplete or partial retraction of the Volvo seat into an insecure, unlocked, or unsafe position is not a "fully contoured adult seat." As shown above, a "fully contoured adult seat" must be safely ready for normal adult use. *See* A80 (1:29-30, 1:48-49, 1:52-53, 2:25-26); A81 (3:34-35, 4:26-28). For these reasons, Lugus's proposed constructions should be rejected.

### 2. The District Court Correctly Granted Summary Judgment Of Noninfringement

All the evidence shows that the accused Volvo booster cushions do not "automatically retract[] . . . to form part of a fully contoured adult seat." A81 (4:41-42). As the district court correctly noted, "there is no dispute that Volvo's

accused product, when transitioning from its child to adult settings, requires a manual intervention . . . to form a portion of [a] fully contoured adult seat." A70. As the owner manuals for the accused Volvo vehicles clearly and consistently explain, a user must manually "[p]ull the handle forward to release the booster cushion" from its locked position and then "[p]ress down on the center of the booster cushion to return it to the stowed position." A619; A624; A629.



A624; A629; *see* A619. Volvo's technical engineering documents further detail how users must "press" down with 53 pounds of force to return the booster cushions to that stowed position so the seat can be safely used again by an adult. *See* A636; A794-95. That is also true for the single-stage booster cushion, which requires a user to manually "[p]ull the handle at the front of the cushion forward" and "press[]" the seat down forcefully to return the cushion to a normal adult position. A633; *see* A794-95. Simply put, to fold the Volvo booster cushion from a booster position to an adult position, the user must pull the handle to release the seat from booster position and then press cushion down into the stowed, adult seat.

They do not automatically retract, and they certainly do not automatically retract all the way into the adult seat.

Lugus admits that, after the user pulls or "releases" the latch, it must still "be pushed down further and locked into place."  Lugus Br. 12; *see also* A880 ("[I]n this *initial* retracted state . . . the rear of [the] child seat can be further pressed with one hand to lock the seat into position." (emphasis added)).  Lugus also admitted in its Complaint that:  "the [Volvo] booster is folded down from either the first stage or second stage by *pulling* the handle *outwards* and *pushing* the booster *downwards*."  A110 (emphasis added).  In fact, Lugus submits no evidence to the contrary.

Lugus argues that it disputes the district court's conclusion that the Volvo's accused product "'requires a manual intervention to lock the Volvo Seat into the adult configuration in order to form the fully contoured adult seat'" and "'a user must manually press the Volvo Seat-bottom . . . into the stowed adult position.'"  Lugus Br. 28-29, 31 (citations omitted).  But, this is misleading.  Lugus admits repeatedly that the user must pull the handle to release the seat from a booster position *and* push the seat down to lock the seat into the adult position.  *See* A110; Lugus Br. 12; *see also* Lugus Br. 36 ("Does some small portion of the child seat extend above some of the top surface of the adult seat?  Yes."); A880 ("[I]n this *initial* retracted state . . . the rear of [the] child seat can be further pressed with one

hand to lock the seat into position." (emphasis added)).

Lugus seems to be arguing only that once a user pulls the handle and releases the latch, the seat automatically retracts *enough* to satisfies this limitation: "once a user releases the latch . . ., the seat automatically retracts into a portion of said adult seat." Lugus Br. 12. In Lugus's view, it does not matter that, after the latch is released, the seat is not secure or locked into an adult position: "[a]fter [the seat] is automatically retracted, it can be pushed down further and locked into place." *Id.* In Lugus's view, the fact that the cushion moves to an intermediate, unlocked position is enough to satisfy the "automatically retracting . . . to form part of a fully contoured adult seat" limitation. Lugus Br. 28. This is incorrect for three reasons.

First, a user releasing the latch so that the cushion falls into an intermediate position between the child booster positions and adult position is not automatic. It is manual. The '926 patent, in fact, describes pulling outward as manual, not automatic. A81 (3:20-21) ("pulled manually outward"); A80 (2:62-63) ("manually pulled forward and downward" by a user); A81 (4:8) ("manually pulled forward by an adult passenger"); *see also* A81 (3:41-45) ("downward manual pressure" on the fastener is manual—like pressing down on the seat); *see, e.g.*, *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1342 (Fed. Cir. 2003) (holding that a claim to a method for controlling an "automatic mechanical vehicle driveline system" was

not infringed because accused system required "driver intervention"); *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 243 F.3d 558, 2000 WL 1205154, at *6 (Fed. Cir. Aug. 23, 2000) (nonprecedential) ("manual initiation is antithetical to the concept of being automatic").

Second, this intermediate position (before the user pushes the seat down into a locked adult position) is not "part of a fully contoured adult seat." As shown above, "automatically retracting . . . into part of a fully contoured adult seat" requires the seat to retract into a seat normally useable by an adult. In this intermediate position, the cushion is not in an adult seat; it must still be pushed down into the locked position to make in a "fully contoured adult seat." To dispute this fact, Lugus relies solely on its concocted testing video (Lugus Br. 32-34), which, as shown below (*infra* at II.A.3), is inadmissible and inadequate to create a genuine issue of material fact. Even Lugus admits that the cushion must still be pushed down further to lock it into place: "the seat can be pushed down further and locked into place." Lugus Br. 12. And Volvo's owner manuals and technical specifications confirm this point. *See* A619; A624; A629; A636; A794-95.

Third, the Volvo booster cushions require the same manual operations as the Stigson prior art that this limitation was added to distinguish during prosecution. *See* A230-37; *see also* A487 (4:14-16). The booster cushion claimed in that Stigson prior art, like the accused Volvo seats (A619; A624; A629), required a user

to unlock the cushion and then push it downward into an adult seat: "[w]hen a user desires to move the cushion insert 16 from the raised position, the user simply presses the push button 26 and applies a downward force onto the cushion insert 16." A487 (4:14-16).



A484 (Figs. 1, 2). Lugus cannot distinguish the prior art by adding the "automatic" retraction "to a fully contoured adult seat" limitations during prosecution and then simply read it out of the claims to assert infringement now. *See Wilson Sporting Goods*, 904 F.2d at 684.

Lugus wryly asserts that a video made by Volvo showing the operation of its booster seats was withdrawn for "good reason." Lugus Br. 35. But, Volvo's video, unlike Lugus's video, was done on an actual accused seat in a Volvo vehicle on the showroom floor of a Volvo dealership. Volvo only withdrew its video, *in response to Lugus's objection and requests for additional discovery*, to avoid an unnecessary discovery dispute that would have prolonged the summary judgment

proceedings. *See* A1014. If the Court desires to see Volvo's video (which was shown at the *Markman* hearing, A369), Volvo would be happy to provide it.

Lugus also suggests that Volvo's intermediate position satisfies the "retracted . . . into part of a fully contoured adult seat" limitation because Figure 1 shows the pivoting seat back extending above the recess shown in seat 14. First, as discussed above, Figure 1 does not show a protruding pivoting back portion 18. Second, in Figure 1, the pivoting back portion 18 is in "a fully contoured adult seat" because it is ready for use by an adult, not because of whether it protrudes or not. In contrast, the Volvo cushions in this intermediary position are not "part of a fully contoured adult seat" because they are not ready for use by an adult.

Lugus argues that this partial or incomplete retraction to this intermediate position is enough because the cushion "has retracted into a '***portion*** of said adult seat' and, indeed, forms '***part*** of a fully contoured adult seat.'" Lugus Br. 37 (emphasis in original). But, Lugus misreads the claims. "Portion of said adult seat" and "part of a fully contoured adult seat" mean only that the retracting portion of the seat is a part of the adult seat (just as pivoting back portion 18 is part of the adult seat in the '926 patent)—not that the seat only partially or incompletely retracts into the adult seat. *See* A78 (Fig. 1); A80 (2:63-65); A81 (3:22-34, 4:23-28). Releasing the seat to an unlocked, intermediate position raised above the adult seat does not satisfy this limitation.

36

### 3.    Lugus Identifies No Evidence That The Limitation Is Met

Lugus also fails to identify any potentially admissible evidence that Volvo's booster cushions "automatically retract[] . . . to form part of a fully contoured adult seat," which independently supports entry of summary judgment.[1]    *See TechSearch*, 286 F.3d at 1360.  Lugus's cites only to a video made by its president that supposedly shows a Volvo booster cushion automatically retracting to form an adult seat.  Lugus Br. 34-36; A882.[2]  But the video offers no support and is inadmissible.

First, the video does not show automatic retraction.  In it, Lugus's president pulls the handle and throws the cushion forward to move it to the unlocked, intermediate position in between a booster position and an adult position.  *See* A882.  As shown above, manually pulling the handle outward and throwing the cushion forward is not automatic retraction.  And, even after the dramatic demonstration, the cushion is still not retracted "to form part of a fully contoured adult seat," it is only in what Lugus's president dubs an "*initial* retracted state,"

---

[1] Lugus has not appealed the district court's Rule 56(d) decision and therefore is limited to the current record on summary judgment.

[2] Lugus states that Volvo never disputed the video and "agreed that [it] applies to all models and model years 2005 [sic] current."  Lugus Br. 9, 37.  That is incorrect:  Volvo spent several pages of its statement of disputed facts challenging the admissibility and veracity of the video.  *See* A986-89.

A880 (emphasis added), and Lugus admits it "can be pushed down further and locked into place," Lugus Br. 12.

Second, regardless of what the "testing" video shows, it cannot create a genuine dispute of fact on summary judgment because it is not potentially-admissible evidence. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996) (excluding hearsay evidence on summary judgment because it was not capable of being admitted at trial). Lugus's president is a lawyer, not a technical expert, A880; the seat in the video cannot be identified as a Volvo seat, *see* A882; the seat is damaged and was not installed in a Volvo vehicle during testing, *see id.*; the "vendor" from which the seat originated is mysteriously unnamed and not even identified as a Volvo vendor, A880-81; Lugus's president specifically declined to "attest to [the seat's] history," A880; and, as the district court put it, the seat is "not a whole seat at all," A410. Given the numerous evidentiary problems, the video is nothing more than the inadmissible unauthenticated hearsay opinion of a non-expert. *See* Fed. R. Evid. 701(c) (outlining the permissible scope of lay opinion); Fed. R. Evid. 801(c) (defining hearsay); Fed. R. Evid. 901(a) (authentication requires "evidence sufficient to support a finding that the item is what the proponent claims it is"); Fed. R. Evid. 901(b)(9) (specifically requiring evidence of

an "accurate result" for authentication of a "process or system").[3]  Moreover, the district court considered the video, *see* A408-10, and declined to rely on it.  *See, e.g.*, *Yeu v. Kim*, 940 F.2d 678, 1991 WL 142608, at *2 (Fed. Cir. July 31, 1991) (nonprecedential) (explaining that "a court's failure to *discuss* does not imply a failure to *consider*").

Therefore, in the face of overwhelming evidence to the contrary, Lugus offered no evidence upon which a reasonable jury could find that Volvo's seats "automatically . . . retract[]" to "form part of a fully contoured adult seat."  As Lugus's proof on that limitation was "deficient," *TechSearch*, 286 F.3d at 1369, summary judgment was proper on that basis alone.

## B.    The Volvo Booster Cushions Do Not Automatically Retract *When A Child Is Not Located In Them*

Summary judgment was proper for an additional reason:  there was no evidence to show that Volvo's seats automatically retract "when said child is not located in said child safety seat."

---

[3] *See also Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 869, 872, 877 (Fed. Cir. 2014) (non-precedential) (affirming summary judgment of noninfringement after rejecting plaintiff's lay evidence regarding a technical dispute); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements."); *Laitram Corp. v. Cambridge Wire Cloth Co.*, 919 F.2d 1579, 1583 (Fed. Cir. 1990) (criticizing parties' "reliance on attorney argument and counsel's unsworn fact statements as 'evidence'").

### 1.    The District Court Correctly Construed "Automatically Retracting . . . When Said Child Is Not Located In Said Child Safety Seat"

The district court correctly interpreted the functional phrase "automatically retracting . . . when said child is not located in said child seat" to require "retraction [to] occur[] when (in the event that, or at the instant that) the child's downward pressure is removed." A69.  As the district court recognized, one plain meaning of "when" is "just after the moment that" and "in the event that."  A38 (citing A157 (*Webster's Third New International Dictionary* 2602)).  Indeed, this Court has previously interpreted "when" to mean just that—"at the time of, and not some appreciable time thereafter." *Renishaw*, 158 F.3d at 1251-52.[4]

To choose between the different plain meanings offered by the parties, the district court properly looked to the intrinsic evidence.  A38.  The district court first looked to the claim language "automatically retracting . . . when said child is not located in said child safety seat."  The plain meaning of this language is that the "automatic" retraction starts "when said child is not located in said child safety

---

[4] *See also Info-Hold, Inc. v. Muzak Holdings LLC*, No. 1:11-cv-283, 2012 WL 3930376, at *4 (S.D. Ohio Sept. 10, 2012) (holding that "the plain meaning of the claim terms favors a construction of 'when' as meaning 'at the moment'"); *Beneficial Innovations, Inc. v. Blockdot, Inc.*, Nos. 2:07-cv-263, 2:07-cv-555, 2010 WL 1441779, at *12 (E.D. Tex. Apr. 12, 2010) (defining "when" to mean "at the time that").

seat."[5]  It is a timing limitation.  The seat retracts "when the child is not located in the seat."

Next, the court properly looked to the Summary of the Invention that explains the "object of the invention to provide a convertible vehicle child safety seat that automatically converts  to a seat for adult use *when it is not occupied by a child* through retraction of the child seat portion into the back portion of the main seat that is accomplished by a piston assembly . . . *when the child is removed from the seat*."  A38-39 (emphasis added) (quoting A80 (2:15-21)).  As the specification details, when the pressure of a child is removed from the seat, the contracting rod 62 contracts to cause the pivoting seat back portion 18 to rotate upward and backward.  A81 (3:22-30, 3:59-66).  Accordingly, after the child's harness is released by pulling the T-shaped handle 52, "[t]his permits the child to be removed from the [pivoting] seat back portion 18 and in view of the previously described contracting piston 56, the seat assumes the position . . . to allow normal seating of an adult passenger."  *Id.* (4:24-28).  The "retracting means" therefore functions automatically to return the seat to an adult position "*when* handle 52 is pulled

---

[5] As the court noted, the parties agreed that "automatically" is generally understood as some kind of "self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation."  A36.  This understanding of "automatically" further supports Volvo's construction of "when" because the predetermined point in the operation that initiates the "automatically retracting" is "when said child is not located in said child safety seat."

outward *and the child is removed from the seat back portion*." *Id.* (3:26-30) (emphasis added).

As a result, the district court properly adopted Volvo's plain meaning construction of "when" because "it comports with the description contained in the '926 patent." A40. *See Renishaw*, 158 F.3d at 1250 (holding that the construction that is most true to the claim language and most naturally aligns with the description is likely the correct interpretation of the claim); *see also Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1479 (Fed. Cir. 1998) ("[C]laims written in the means-for form of § 112 [f] do not . . . acquire a scope as to the function beyond that which is supported in the specification . . . .").

Lugus argues "when" must be interpreted more broadly to mean "at some point" or " during the time that." Lugus Br. 17-19. But, as the district court recognized, Lugus's construction would effectively render this limitation meaningless because it would make "the presence of the child . . . irrelevant to the operation of automatic retraction." A39. Claim 1 already requires "automatically retracting said child safety seat into a portion of said adult seat." And, by definition, a child safety seat can only retract into an adult seat while the child is not located in the seat. If the child seat retracted into an adult seat at some point during which the child was in the seat, it would be unsafe for the child and inconsistent with the object of the invention as a child safety seat. *See*, *e.g*., A81,

Claim 1 ("child safety seat"); A80 (1:18-20, 44-47, 2:22-24). Thus, Lugus's construction is incorrect because it is improper to interpret terms in a manner that makes the limitations meaningless. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention . . . .").

In addition, Lugus's construction does not align with the intrinsic evidence because the '926 patent describes or enables an invention automatically retracting only at the instant the child is removed. *See* A80 (2:15-21); A81 (3:22-30, 3:59-66, 4:24-28). The prosecution history also contradicts Lugus's construction because the "when" limitation was added by a narrowing amendment to overcome the Stigson prior art that allowed retraction at any time the child was not located in the seat. *See* A230-37; A487-88 (4:50-5:10).

Lugus then argues that the district court's construction is flawed for four reasons. Lugus Br. 17. First, Lugus argues that the "when" limitation should be given a broader construction because the claim used the language "not located in" as opposed to "removed," but that is not how those phrases are used in the specification. *Id.* The specification uses both of these phrases to describe the same embodiment—where the child's removal from the seat causes retraction. A80 (1:65-67); *compare* A81 (3:22-30). In fact, the specification never describes nor enables a child seat retracting at any point other than the instant that the child is

removed. Moreover, the patentee used this "when" limitation to overcome the Stigson prior art that did allow retraction at some later point after the child was removed. *See* A230-37; A487-88 (4:50-5:10). Thus, Lugus's view that one phrase was intended to be broader than the other is not supported by the intrinsic evidence.

Second, Lugus argues that the prosecution history supports its construction, not Volvo's, because it focused on the capability to retract, not that the seat always or only retracts when the child is removed. Lugus Br. 18. But, Lugus fails to cite any part of the prosecution history to support its position. *Id.* Lugus cites nothing, because there is nothing. It also ignores the fact that the "when" limitation was added by amendment to overcome prior art, like Stigson, that had the capability to retract at times after the child was removed. *See* A230-37; A487-88 (4:50-5:10).

Third, Lugus argues that the district court improperly read the preferred embodiment into claim 1. Lugus Br. 18. But this is incorrect. As the district court's claim construction order explains, the parties both proposed that "when" should be given its plain meaning, but proposed different plain meanings. A38. As a result, the district court looked to the intrinsic evidence only to select between the proposals, and adopted "Volvo's proposed construction because it comports with the description contained in the '926 patent" and was "consistent with the

intrinsic evidence contained in the specification." A40. The district court did not limit the construction of "when" based on lexicography or disclaimer.

Lugus also argues that the specification ties the retraction to two events: pulling the handle and the removal of the child, but Claim 1 is not tied to either; according to Lugus, it merely has to be capable of retracting at some point when the child is not located in the seat. Lugus Br. 18. But, Claim 1 does not merely claim the capability to retract when the child is not located in the seat; Claim 1 claims the function of "automatically retracting . . . when the child is not located in the seat." As detailed above, the plain meaning of Claim 1 requires the "automatically retracting" to start "when the child is not located in the seat"— consistent with the specification.

While irrelevant, the specification also does not tie the retraction to two events. The specification ties pulling the T-shaped handle to releasing the fastener (i.e., seat belt), and only removal of the child causes the automatic retraction. The specification describes pulling the T-shaped handle "permits the fastener 40 [i.e., seat belt] to be released." A81 (3:17-21, 4:21-25). It then describes that removal of the child from the seat causes the automatic retraction. *Id.* (3:59-66, 4:24-28). As the district court explained, "though the piston assembly may 'want' to automatically retract, it may only retract at the time that the pressure from the child is removed." A40.

Fourth, Lugus argues that the court misread the specification because, although the weight of a child can hold the seat down, an adult could also pull it down and the T-shape handle could hold the seat in place. Lugus Br. 19-20. But, the specification never describes the invention deploying the child seat without a child. In fact, it would make no sense to deploy the child seat without a child. It would also be contrary to the purpose of the invention for "mass transit vehicles" where "[t]he convertible vehicle child seat is hidden away when it is not in use." A80 (1:38-42, 1:50-51). The portion of the specification cited by Lugus states only that an adult can pull the seat down *for a child to sit*: "manually pulled forward by an adult passenger and the child is then placed" in the seat. A81 (4:6-10). It does not suggests that the seat would ever be deployed without a child. Similarly, the T-shape handle 52 only holds the seat belt fastener 40 in place, not the child seat. *Id.* (3:17-21, 4:21-25). As the district court explained, "Lugus overlooks the role of the pressure of the child that appears throughout the '926 patent." A39-40. For all these reasons, the district court properly construed the term "when."

### 2.    The District Court Correctly Granted Summary Judgment Of Noninfringement

Lugus has specifically conceded noninfringement in light of the district court's construction for this limitation. Lugus Br. 4; A810; *see* A1040. The Court should therefore summarily affirm if it agrees there was no error in the court's construction of that term.

In any event, all evidence in the record confirms that the accused Volvo booster cushions do not infringe any claim of the '926 patent because they do not "automatically retract[] . . . when said child is not located in said child safety seat." A81 (4:36-43). As the district court correctly reasoned, the retraction of Volvo's booster cushions "occurs independent of the removal of a child's downward pressure [from the booster cushion] and only when a user pulls the handle and pushes down on the seat cushion, unlike the limitation found in Claim 1 where retraction occurs when (in the event that, or at the instant that) the child's downward pressure is removed." A69.

The Volvo manuals and technical documents in the record detail the noninfringing operation of the accused booster cushions.[6] As they show, the retraction of Volvo's integrated booster cushions is not linked to the presence or absence of a child. Once deployed, the cushions (both single-stage and two-stage)

---

[6] Lugus makes two passing arguments about Volvo's evidence: one concerns an allegedly incomplete document, Lugus Br. 8 n.1; the other addresses a particular Volvo employee's authentication of documents, Lugus Br. 29 n.3. The first is irrelevant because a complete copy of the supposedly incomplete document is included in the record. *See* A926-54. And the second makes little sense. A qualified Volvo employee who was properly identified under Rule 26 as a person with knowledge provided a declaration to authenticate Volvo's relevant documents, which can also be easily admitted at trial through a variety of Volvo witnesses. *See* A792-96; A896; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013) (admissibility of evidence is governed by regional circuit law), *cert. denied*, 134 S. Ct. 900 (2014). Lugus does not—and cannot—argue that the district court abused its discretion.

are locked in place until a user manually "[p]ull[s] the handle at the front of the cushion forward" and presses them back into their stowed position—just as Lugus originally asserted in its complaint.  A636; *see* A619; A624; A629; A633; *see also* A110.



A624; A629; *see* A619; A633.  That operation is identical regardless of whether a child is using the cushion, and therefore falls outside the scope of the '926 patent. *See id.*

### 3.    Lugus Identifies No Evidence That The Limitation Is Met

Lugus cites just one document to demonstrate the existence of a genuine factual dispute that the accused cushions "meet the 'automatically retracting' . . . 'when said child is not located in said child safety seat' language."  Lugus Br. 20-21.  Lugus cites A958 but quotes language from A930.  Regardless, both pages are irrelevant as they discuss *deploying*—not *retracting*—Volvo's booster seats. According to Lugus, that document describes how Volvo's booster cushions will not retract until a button is pushed and the child is removed from the seat.  Lugus Br. 21.  But Lugus is clearly mistaken.  The cited page states that a button must be pushed before the two-stage booster cushion will "*levitate[]* to the 2nd position"

from the "1st position." A930 (emphasis added). That has nothing to do with *retraction* of the cushion.

Lugus's proof is therefore "deficient in meeting an essential part of the legal standard for infringement," *TechSearch*, 286 F.3d at 1369, and the district court's noninfringement judgment should be independently affirmed on that basis.

## C. The District Court's Doctrine Of Equivalents Decision Should Not Be Disturbed

Lugus does not appeal any of the district court's findings of no infringement under the doctrine of equivalents on either of the two noninfringement grounds at issue. Lugus argues only that the district court's application of prosecution history estoppel should be vacated if the claim construction is disturbed. Lugus Br. 40. Therefore, if this Court affirms either of the district court's constructions of "automatically retracting . . . to form part of a fully contoured adult seat" or "when," this Court should also affirm the district court's finding of no infringement under the doctrine of equivalents.

## D. The District Court Did Not Err In Construing The Corresponding Structure For "Retracting Means"

Lugus also argues that the district court "imported too many structural features from the specification" into the structural definition for "retracting means." Lugus Br. 37-39. However, this argument is irrelevant because, as Lugus admits, the district court's ruling did not turn on the corresponding structure.

In any event, it is also wrong.  The district court defined the structure corresponding to the "retracting means" of claim 1 as:

> Contracting piston 56, including the forward portion 58, rear portion 60, and piston rod 62; pivoting back portion 18, including rear portion 64, bushing 84, bolt 86, downward projection 88, bushing 90, and bolt 92; seat frame 94; bushing 96; and bolt 98, such that the bottom surface of the pivoting back portion 18 forms a fully contoured adult seat in the raised position and the top surface of the pivoting back portion 18 can form a seat portion of a child safety seat.

A42-43.

Lugus argues that the court erred by "import[ing] too many structural features from the specification into the claim"—specifically the forward portion 58 and rear portion 60 of piston 56, the seat frame 94, and the pivoting back portion 18.  Lugus Br. 37-39.  Because Lugus does not argue that the court erred by including the following structures:  piston rod 62, rear portion 64, bushing 84, bolt 86, downward projection 88, bushing 90, bolt 92, bushing 96, or bolt 98, there is no dispute with regard to those limitations and Lugus has now waived any right to dispute those structures.  A42-43; *see Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 973 n.4 (Fed. Cir. 2006).

All of the structures identified by the district court are necessary to perform the function of the claimed "retracting means."  *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) ("'[T]he court must identify the

corresponding structure in the written description of the patent that performs the function.'" (citation omitted)).  Lugus has conceded that there "is only one seat disclosed in the ['926 patent]."  A283.  In that single disclosure of structure, the forward portion 58 of the contracting piston, the rear portion 60 of the piston rod, and the pivoting back portion 18 (along with the seat frame 94 which connects the parts) are all required to perform the claimed automatic retraction of the child seat. The forward portion 58 of contracting piston and the rear portion 60 of the piston rod work to secure the piston 56 and piston rod 62 to the seat and pivoting back portion to enable retraction.  *See* A81 (3:51-66).  And without the L-shaped, pivoting back portion 18, the retracting force "I" could not be exerted "on the portion 88 to cause the seat portion 18 to rotate upward."  A81 (3:63-65).  Thus, the district court did not err by including those structures in its construction of "retraction means."

## CONCLUSION

The district court's grant of summary judgment of noninfringement should be affirmed.

Dated: January 5, 2015                    Respectfully submitted,

*/s/ Matthew J. Moore*

Matthew J. Moore
Gabriel K. Bell
Robert J. Gajarsa
LATHAM & WATKINS LLP
555 Eleventh St., NW
Suite 1000
Washington, DC 20004
(202) 637-2200
matthew.moore@lw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2015, I caused the foregoing Brief of Appellee to be served by electronic means through the Court's CM/ECF system on Counsel for Appellant, who are registered CM/ECF users.


*/s/ Matthew J. Moore*
Matthew J. Moore

## CERTIFICATE OF COMPLIANCE WITH RULE 32

I hereby certify that this brief complies with the type-volume limitations of Fed. R. of App. P. 32(a)(7)(B) because the brief contains 11,002 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief was prepared using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Matthew J. Moore*
Matthew J. Moore